[Civ. No. 1959.   Third Appellate District.—October 24, 1919.]

## STANDARD AUTO SALES CO., INC. (a Corporation), Appellant, v. CHARLES LEHMAN, Respondent.

**[1]** LIENS—MORTGAGES—OWNER AS MORTGAGEE.—A party cannot hold a mortgage on and the legal title to the same property at the same time.

**[2]** ID.—HYPOTHECATION — TITLE IN ANOTHER.—A person cannot hypothecate property where the title is in another.

**[3]** ID.—DELIVERY OF AUTOMOBILE TO VENDEE—LIEN FOR PURCHASE PRICE.—Where the vendor of an automobile retains title in himself, the possession of the machine being delivered to the vendee, he does not have a lien thereon for the unpaid balance of the purchase price.

**[4]** ID.—PLEDGE—VENDOR NOT IN POSSESSION.—Such vendor was not secured by a pledge of said property. In order to have such security he must have been the pledgee and in possession of the property.

**[5]** ATTACHMENTS—SALE OF AUTOMOBILE—RETENTION OF TITLE—ACTION FOR PURCHASE PRICE—RIGHT TO ATTACHMENT.—The vendor of an automobile under an installment contract, the possession of the machine being delivered to the vendee, in an action for the unpaid balance of the purchase price, is entitled to a writ of attachment under subdivision 1 of section 537 of the Code of Civil Procedure, where possession of the machine is not retaken, notwithstanding that the title to the machine is retained in himself.

[6] ID.—CONSTRUCTION OF ATTACHMENT STATUTES.—Statutes permitting and providing for the levying of attachments must be strictly construed and followed. When the law designates and specifies in what instances an attachment may issue and in what cases it is not a legal remedy, the express will of the legislature must control.

APPEAL from an order of the Superior Court of Sacramento County dissolving an attachment. Charles O. Busick, Judge. Reversed.

The facts are stated in the opinion of the court.

Max J. Kuhl for Appellant.

White, Miller, Needham & Harber for Respondent.

BURNETT, J.—The action was brought on a written contract for the sale and purchase of an automobile for the sum of $950, $150 to be paid by the defendant at the time of signing the contract, and the balance in certain definite monthly installments. Possession of the machine was delivered to the defendant, but it was provided in the contract that the title was to remain in the plaintiff until all the installments were paid. Paragraph 6 of said contract, which constitutes the basis of this action, reads as follows: ''Should the buyer make default in the payment of the said purchase price, or any part thereof, or in the event of the buyer's failure to perform any of the conditions and covenants herein contained, or to pay the cost of said insurance on demand, the seller or assigns may, without notice, declare any and all payments provided for herein to be due and payable at once, and may immediately take possession of said property, whenever found, without process of law, using all necessary force to do so, and retain the same, and all payments previously made by the buyer shall be construed to be and applied as compensation for depreciation in value, and for the use of said property, and the buyer hereby waives and relinquishes all rights to the moneys so paid, and to the said property.''

To the complaint, and made a part thereof, was attached said contract. It was alleged that the defendant failed to pay certain of the installments as they fell due, and that $650 of the purchase price remained due and unpaid from the defendant to the plaintiff, and that the plaintiff had

complied with all the terms of the contract as it had agreed. The action was brought for the balance of the purchase price, and not for the return of the automobile. An attachment was issued in behalf of plaintiff and levied upon the bank account of the defendant. All the proceedings in reference to the issuance and levying of the attachment were in regular form and in accordance with the requirements of sections 537 and 538 of the Code of Civil Procedure. The defendant made a motion to dissolve the attachment upon the ground that it was shown by the complaint and contract on file in said action that the debt was *secured by a mortgage or lien or pledge of personal property,* and that such security had not become valueless and that no proceedings had been taken to exhaust said security. Affidavits were filed in support thereof, and thereupon the motion was granted, and from the order dissolving the attachment the plaintiff has appealed. The only question in the case is whether it falls within subdivision 1 of said section 537, providing that attachment may issue "in an action upon a contract, express or implied, for the direct payment of money, where the contract is made or is payable in this state, and is not secured by any mortgage or lien upon real or personal property, or any pledge of personal property, or, if originally so secured, such security has, without any act of the plaintiff, or the person to whom the security was given, become valueless." And the only doubt as to the application of said section is whether plaintiff's contract was secured by "any mortgage or lien upon real or personal property or any pledge of personal property." It is admitted that the action is brought upon a contract made payable in this state for the direct payment of money, but it is claimed by respondent that the plaintiff, by reason of the fact that it retained title to the property and had the right to retake it in case of default on the part of defendant in the payment of any of the installments, had security within the contemplation of said section of the code and, therefore, attachment was not a proper remedy.

In the determination of the question it is important to notice carefully the precise terms used in the statute. The law does not provide that no attachment shall issue where the plaintiff has other *security* for the claim, but it

designates the specific kinds of security that will bar the remedy, namely: A mortgage, a lien or a pledge of the property. As to the mortgage, it is quite apparent from the definition of that term in the code that plaintiff had no such security. By the terms of the contract the plaintiff remained the owner of the property, and this necessarily precludes the condition that it could be a mortgagee. [1] A party cannot hold a mortgage on and the legal title to the same property at the same time. A mortgage is defined by the Civil Code, section 2920, as follows: "Mortgage is a contract by which specific property is hypothecated for the performance of an act, without the necessity of a change of possession." In other words, for plaintiff to be the mortgagee of the property it must have been hypothecated to it by the defendant, but this could not be, since defendant was not the owner. [2] A person cannot hypothecate property where the title is in another.

[3] The question then arises whether the plaintiff, under the terms of the contract, had a *lien* to secure the payment of the obligation. As to this it seems to be plain under the law that a vendor's lien does not exist as to personal property, independent of possession. There is no controversy that the defendant at the time of the action had, and ever since the execution of the contract has had, possession of the machine. Therefore, since by the law a lien does not exist independent of possession it would follow, necessarily, that plaintiff did not have that kind of security. Section 3049 of the Civil Code provides as follows: "One who sells personal property has a special lien thereon, dependent on possession, for its price, if it is in his possession when the price becomes payable; and may enforce his lien in like manner as if the property was pledged to him for the price." If his lien depends upon his possession, manifestly the lien would not exist if the possession were in another. Besides, the existence of a lien and ownership as to the same property in the same party at the same time is not in accordance with the legal conception of these terms. A person cannot have a lien upon personal property of which he is the owner. A lien is a charge upon specific property which the holder thereof is entitled to enforce as a security for the performance of an obligation, which exists in his favor *against* the owner of the property. (Civ.

Code, sec. 2874.)  It would seem plain, therefore, that plaintiff did not have a lien, as that term is understood in the law, upon said automobile.

[4]  It seems equally plain that plaintiff was not secured by a *pledge* of said property.  In order to have such security he must have been the pledgee and in possession of the property.  Section 2988 of the Civil Code provides: "The lien of a pledge is dependent on possession, and no pledge is valid until the property pledged is delivered to the pledgee, or to a pledge-holder, as hereafter prescribed."

[5]  If we are, therefore, to be guided by the plain meaning of the statute, it would follow that plaintiff was entitled to the writ of attachment.  The only ground upon which this conclusion could be avoided would be that the said statute contemplates other security as well as those which are specifically mentioned.  This position would, however, be in contravention of a familiar principle for the interpretation of statutes, which from the enumerated specification of certain particular ones requires the exclusion of the consideration of other classes.  In other words, the statute having specified the three particular kinds of securities, to wit; mortgage, lien, and pledge, by implication there would be excluded any other species.  Indeed, we think that the lower court, in holding that this was not a proper case for attachment, has gone outside the plain and simple meaning of the statute.  In doing so, it had apparently the support of certain decisions of the courts to which specific reference will hereafter be made.  [6]  But it seems to be well settled that the statutes permitting and providing for the levying of attachments must be strictly construed and followed.  (*Kline* v. *Easton, Eldridge & Co.,* 148 Cal. 287, [113 Am. St. Rep. 253, 83 Pac. 36].)  When the law, therefore, designates and specifies in what instances an attachment may issue and in what cases it is not a legal remedy, the express will of the legislature must control.

As to the cases cited we think *Eads* v. *Kessler*, 121 Cal. 244, [53 Pac. 656], is most nearly in point.  In that case the plaintiff agreed to sell defendant an interest in certain patent rights, the purchase price to be paid in installments, the plaintiff to give the defendant a conveyance of the patent right when the purchase price was paid in full.  The defendant did not pay one installment when it fell due and

the plaintiff sued and levied an attachment. The defendant contended that the writ of attachment was improperly issued and should be discharged because the plaintiff had a vendor's lien upon the patent to secure the payment of the money sued for. In holding that the attachment was proper, the court said: "It should be observed that the existence of a vendor's lien always presupposes that title to the goods has passed to the vendee since it would be an incongruous conception that the vendor might have a lien upon its own goods." The court therein quotes section 119 of Tiedeman on Sales, as follows: "In order that the vendor of goods may claim a lien on the goods they must have or become the property of the vendee, for one cannot have a lien on goods belonging to himself. . . . The only cases in which a vendor can have a lien on goods are those on which the title to the goods passes to the vendee without delivery or possession." It is true that the immediate question decided in that case was as to whether or not the plaintiff had a vendor's lien on personal property to which he had not passed title, still the facts of the case were very similar to those herein, and it would seem that the decision would have been different if the court had believed that the plaintiff had any security, as provided by said section of the code. It may not be amiss to specify the points of agreement between that case and this. In both cases the plaintiff sold personal property to the defendant. In both cases title remained in the plaintiff until the purchase price should be paid. In both cases the purchase money was not paid and an action was brought to enforce payment and an attachment levied on the property of defendant. In both cases the defendant objected to the attachment on the ground that plaintiff had security for the payment of his obligation. In the Eads case the particular contention was that the plaintiff had a vendor's lien, whereas, in this case the defendant has not specified the nature of the security; although from his argument it is a reasonable inference that he claims that plaintiff had a security in the nature of a mortgage. It would, indeed, appear that it could with greater reason in that case than in this be concluded that plaintiff had security for his claim, since he retained possession of the property which was the subject of the executory sale.

The particular decision in this state upon which respondent relies is *Payne* v. *Bensley,* 8 Cal. 260, [68 Am. Dec. 318]. In that case the court stated that "the only question in this case is whether a negotiable promissory note, not yet due, and *bona fide* taken as collateral security for pre-existing debt, is subject, in the hands of the endorsee, to any defense existing at the date of the assignment, between the original parties." But in the determination of this question was involved the consideration for said assignment, and plaintiff, in support of his contention that there was a new consideration for said assignment of the note of Bensley as collateral security for the pre-existing debt, contended that before the assignment he had a remedy by attachment against his debtor, but by taking the collateral security he lost that remedy, and that the loss of this remedy constituted a new consideration, moving from Payne to his debtor, the assignee of the note. This case was decided in the year 1857, and the statute governing attachment at that time (section 120 of the Practice Act [Stats. 1851, p. 68]), provided that the remedy of attachment did not exist where the contract was secured by a mortgage on real or personal property. The statute did not then make any provision in reference to a pledge, but the reasoning of the court is to the effect that since a mortgage is a mere security for a debt, the term was broad enough to include a pledge, which is "essentially the same, and intended to accomplish the same end." The conclusion was based upon the assumption that the "intention of the legislature was to use the word 'mortgage,' as applicable to personal property in its widest instance." In that case, it is to be observed that there was actually a pledge of personal property. Hence, the assignment had the effect of giving the plaintiff security. It is true that the statute in force at that time did not specifically mention such security, but a short time after the decision said section 120 of the Practice Act was amended so as to include a pledge. Applying the law that exists now to the facts of that case we would have to reach the same conclusion, although, we think the law was very liberally construed by the distinguished jurist who wrote the opinion in the Payne case, and his associates, in order to affirm a judgment that was manifestly just and equitable. But in the present instance it cannot

be said, as we have already seen, that there was a pledge of said personal property. The decision, therefore, that the term "mortgage" in the statute was broad enough to include the term "pledge" would not justify a decision in favor of defendant in this case, since there was neither a mortgage nor a pledge. Respondent has also called attention to two decisions by the supreme court of Idaho, which seem to support his contention. The first is *Mark Means Transfer Co.* v. *Mackinzie*, 9 Idaho, 165, [73 Pac. 135], and the second *Barton* v. *Groseclose*, 11 Idaho, 227, [81 Pac. 623]. They are both to the effect that "one who makes conditional sale of personal property, delivering possession to the vendee, and retaining the title thereto himself until the purchase price shall be fully paid, cannot, upon failure of the purchaser to make the payments, have an attachment against the property of the purchaser to secure the payment of the purchase price until the property itself has been exhausted." It was held in those cases that the security was neither a mortgage, lien, nor pledge, but that it was a higher class of security than either, and that the statutes of Idaho contemplated such security as grew out of the condition wherein the vendor retained title in the property until the entire purchase price was paid. It is to be observed, however, that the language of the Idaho statute is somewhat different from ours in that it makes it necessary to show, referring to the contract sued upon, "that the payment of the same has not been secured by any mortgage or lien upon real or personal property or any pledge of personal property, *or* if *originally secured,* that such security has without any act of the plaintiff become valueless," while our statute is identical with that except the corresponding phrase is "originally *so* secured." The expression used in the Idaho statute might very properly be construed as enlarging the instances previously enumerated, so as to include any kind of security, whereas the corresponding phrase in the California statute clearly refers and limits the application of the law to the three kinds of securities specifically mentioned. Respondent also argues that the rule must be the same in an executory contract for the sale of real property and for the sale of personal property. And since it has been held that in the former instance an attachment will not issue, that, therefore,

the same rule must apply in the latter instance. But we think there is a clear distinction between the two; for instance, where a vendor sells real property and conveys the title and gives up possession he has a vendor's lien upon the property for the payment of the purchase price. But in a similar situation as to personal property there is no vendor's lien, since the vendor has surrendered possession. It is true, also, that in an executory contract for the sale of real property where the title has not passed it has been held that the vendor has security in the nature of an equitable mortgage for the payment of the balance of the purchase price and, therefore, that he is not entitled to the remedy by attachment. (*Richvale Land Co.* v. *Johnson,* 28 Cal. App. 296, [152 Pac. 312].) The ground upon which that decision is based and also *Gessner* v. *Palmateer,* 89 Cal. 89, [13 L. R. A. 187, 24 Pac. 608, 26 Pac. 789], cited therein, is that the "transaction shows upon its face that the vendor held the legal title as security" and that the vendee cannot prejudice that title or in any way divest it except by performance of the act for which the vendor holds it. The difference, however, between the two kinds of property is the reason for the difference in the rule applicable to each. Real property is fixed and cannot be destroyed, lost, stolen, or taken away. And the vendor, therefore, always has his security for the payment of the balance of the purchase price. While personal property, as the automobile in the present case, may be taken away or stolen or destroyed with the consequent loss of his security and without the knowledge of the vendor. Of course, if the seller had retained possession of the automobile and passed title, there would have been a lien upon the property. But retaining the title under the executory contract of sale and passing possession, plaintiff has neither a lien nor a mortgage as security, but only the bare legal title and the buyer's promise to pay.

We do not see how it can be held, without judicial legislation, by introducing something into the statute which is not contained therein, that the decision can be sustained.

The order is, therefore, reversed.

Ellison, P. J., *pro tem.,* and Hart, J., concurred.

A petition to have the. cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 22, 1919.

All the Justices concurred, except Melvin, J., who was absent.