[Sac. No. 4829. In Bank.—April 21, 1936.]

CITY INVESTMENTS, LTD. (a Corporation), Appellant, v. CHARLES G. JOHNSON, as Treasurer, etc., Respondent.

Cushing & Cushing, Charles S. Wheeler, Charles S. Wheeler, Jr., Walter Slack and D. L. King for Appellant.

U. S. Webb, Attorney-General, H. H. Linney, Deputy Attorney-General, Roger J. Traynor and Frank M. Keesling for Respondent.

SHENK, J.—This is an appeal by the plaintiff from a judgment partially in its favor, in an action to recover taxes paid under protest. The question presented involves the validity of a tax assessed against the predecessors of the plaintiff and collected under the Bank and Corporation Franchise Tax Act of 1929. (Stats. 1929, p. 19.) The contention is that the tax so assessed and collected was for the first half of the calendar year 1929 and overlapped a previous tax collected for the fiscal year 1928–1929, and was therefore void to the extent of the overlap. The trial court granted a refund on account of the tax applicable to the month of December, 1929, but denied any further relief.

The plaintiff is the successor of four affiliated corporations which were dissolved in December, 1929. In 1928 taxes were assessed and collected on the franchise of the four corporations as provided by subdivision (d) of section 14 of article XIII of the Constitution and section 3664d of the Political Code. That constitutional subdivision adopted in 1910 provided for an annual tax on the franchise of the affiliated corporations, at the rate of one per centum of the actual cash value thereof. The first half of the 1928 assessment was paid on August 6, 1928, and the second half on January 28, 1929. In November, 1928, section 16 of article XIII was added to the Constitution. Subdivision 2 (a) of that section provided that corporations subject to be taxed pursuant to subdivision (d) of section 14, in lieu of the tax thereby provided for, should annually pay to the state for the privilege of exercising their corporate franchises within the state a tax equal to four per cent of their net incomes. Subdivision 5 of said section provided that the taxes should become a lien on the first Monday in March of 1929 and of each year thereafter; also that the legislature should pass laws necessary to carry the section

into effect. In 1929 the legislature passed the Bank and Corporation Franchise Tax Act which was approved and effective on March 1, 1929. By section 4 thereof corporations of the class referred to in subdivision 2 (a) of said section 16 of article XIII of the Constitution were required to pay annually to the state, for the privilege of exercising their corporate franchises within the state, a tax according to or measured by their net incomes, at the rate of four per centum upon the basis of net income for the next preceding fiscal or calendar year.

The four affiliated corporations, predecessors of the plaintiff, filed a joint return in compliance with the new Bank and Corporation Franchise Tax Act, reporting their net income for the calendar year 1928. The ground of the protest accompanying payment of the tax assessed pursuant to that act and based on the joint return was that the payment of any tax under the new act for the period from January 1, 1929, to June 30, 1929, constituted double payment of taxes which was not authorized by section 16 of article XIII of the Constitution because the years covered by both sections 14 and 16 overlapped as to that period. In prosecuting its claim for the alleged double payment the plaintiff insists that payment in August, 1928, and January, 1929, of the old franchise tax pursuant to subdivision (d) of section 14 of article XIII constituted payment on the basis of the state's fiscal year to June 30, 1929; that, consequently, such payment gave the companies the privilege of exercising their franchise to the latter date, and payment of the full amount of taxes for the year 1929 under the new act was unauthorized. The plaintiff insists that "in an orderly, continuous system of taxation there should be no gaps nor overlaps as to state taxation" and that that is all it now asserts. But a determination that there is an overlap does not solve the problem or necessarily destroy either tax. The nature of the tax and the power to impose it are the vital questions. ▮ The tax on franchises of corporations at their "actual cash value" as authorized by subdivision (d) of section 14 of article XIII (in effect from November 8, 1910, to November 6, 1928) was an *ad valorem* or property tax. The tax authorized by subdivision 2 (a) of section 16 of article XIII, adopted in 1928, is a tax on the right of a corporation to do business in this state, familiarly known as an excise or license tax. The power to impose

charges for public revenue by both methods and for identical taxing periods cannot be challenged on the ground that the exaction of both is double taxation or that there is an unlawful overlapping of one on the other. (*Kaiser Land & Fruit Co.* v. *Curry*, 155 Cal. 638, 652 [103 Pac. 341].) Prior to 1927 and during the time that *ad valorem* franchise taxes were levied franchise license taxes were also imposed. (Stats. 1905, p. 493; Stats. 1915, p. 422.) The fact that the two contemporaneous tax charges then overlapped, in whole or in part, was not from a taxing standpoint constitutionally objectionable. ■ It is conceded that the legislature was without power on March 1, 1929, when it enacted the Bank and Corporation Franchise Tax Act, to provide for an *ad valorem* franchise tax. Power to enact such a tax had been withdrawn by the constitutional amendment of 1928. That amendment provided exclusively for a franchise license tax. It also enjoined upon the legislature the duty to pass a law to carry the provision into effect, and specifically provided that such a law should be effective immediately upon its passage. ■ The substance of plaintiff's case is that the Franchise Tax Act of March 1, 1929, was not operative as to it until July 1, 1929, or that the payment by it of the franchise *ad valorem* tax levied and collected by the state prior to March 1, 1929, was in effect payment of its franchise license tax to July 1, 1929. For the purposes of this case it may be assumed that the period for which the *ad valorem* tax was assessed and collected was for the fiscal year beginning July 1, 1928, and ending June 30, 1929. But it does not follow either that the act of March 1, 1929, was not effective immediately upon its passage so as to require payment of a license tax therein exacted, or that the payment of the *ad valorem* tax theretofore collected constituted payment of the license tax. The *ad valorem* franchise tax had become a valid charge under constitutional authority prior to the 1928 amendment, and the "in lieu" provision of that amendment cannot be given the effect of destroying the right to collect it. The obvious purpose of the "in lieu" provision was to foreclose the legislature from thereafter exacting an *ad valorem* tax on franchises of the kind here involved. For like reasons it cannot be held that the collection of the *ad valorem* tax which had become a valid charge under existing constitutional and statutory provisions authorized the plaintiff's

predecessors in interest to do business in this state as provided in the 1928 amendment and the act of March 1, 1929, passed in pursuance thereof. The plaintiff's predecessors in interest paid nothing in 1928 for the right to do business in this state and were required to pay nothing in 1929 for that purpose until the act of March 1st went into effect. The immediate effect of that amendment imposed the duty on them to comply with its terms, regardless of prior payments of *ad valorem* taxes. The plaintiff has not shown that it is entitled to any further relief.

The judgment is affirmed.

Conrey, J., Waste, C. J., Seawell, J., Langdon, J., and Curtis, J., concurred.

Rehearing denied.