COMMODITY CREDIT CORPORATION v. COUNTY OF OKLAHOMA et al.

No. 399.

District Court, W. D. Oklahoma.

Jan. 8, 1941.

Charles E. Dierker, U. S. Atty., and Geo. H. McElroy, Asst. U. S. Atty., both of Oklahoma City, Okl., and Berryman Green, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, and Andrew D. Sharpe, Sp. Assts. to the Atty. Gen., on the brief), for plaintiff.

B. C. Logsdon, Asst. Co. Atty., and Fred Hansen, Asst. Atty. Gen., both of Oklahoma City, Okl. (Lewis R. Morris, Co. Atty., of Oklahoma City, Okl., and Mac Q. Williamson, Atty. Gen., on the brief), for defendants.

C. B. Cochran, of Oklahoma City, Okl., amicus curiae.

VAUGHT, District Judge.

This is an action for a declaratory judgment and for injunctive relief based upon the following state of facts.

The Commodity Credit Corporation acquired a pledge lien on 12,221 bales of cotton prior to May 31, 1938; said cotton was in a compress in Oklahoma County, Oklahoma, on said date, and on September 11, 1939, was assessed for taxation for 1939 by the taxing authorities of Oklahoma County against its unknown owners as of May 31, 1938. The Commodity Credit Corporation acquired title to said cotton prior to September 11, 1939, but after May 31, 1938, and the tax warrant was issued January 31, 1940.

On April 9, 1940, tax assessments were made against 81 bales of the 28,000 bales of cotton, said assessments being made as of May 31, 1939, against five designated owners of said cotton residing in Oklahoma County.

The Commodity Credit Corporation acquired a pledge lien on said 81 bales prior to said date but had not acquired title to said cotton up to the date of the trial. Tax warrants based on said assessments were placed in the hands of the sheriff on April 11, 1940, for execution.

It is agreed that the only issues involved in this case are whether or not said 12,221 bales of cotton and said 81 bales of cotton can be sold by the sheriff of Oklahoma County under said tax warrants free from the claims of the Commodity Credit Corporation.

It is the contention of the plaintiff that it is an instrumentality and agency of the United States engaged in the exercise of governmental functions; that all of the issued and outstanding stock of said plaintiff corporation is owned by the United States; that it had extended credit to the farmers producing said cotton herein involved and had received from said farmers notes and loan agreements in which the owners of said cotton, by pledging the warehouse receipts therefor as collateral security as payment for the indebtedness, created a lien upon said cotton in favor of the plaintiff corporation which could only be extinguished by the payment of the indebtedness or by the sale of the cotton by the plaintiff to pay said indebtedness; that said cotton was not subject to taxation by the authorities of Oklahoma County of the State of Oklahoma for the reason that plaintiff is an instrumentality of the United States government in the exercise of a governmental function and was the owner of an interest in said cotton.

The defendants contend that the government extended its credit upon this cotton with notice and knowledge that it would

be, or at least was subject to be, taxed by the state authorities; that the 12,221 bales on which the plaintiff corporation had acquired a pledge prior to May 31, 1938, were assessed by the defendants for the year 1939 against the unknown owners as of May 31, 1938, and that, since the plaintiff acquired title after May 31, 1938, and prior to September 11, 1939, said cotton was subject to taxation by the defendants for the year 1939 even though the tax warrant issued January 31, 1940. The same principle applies with reference to the taxability of the 81 bales of cotton for the year 1940.

This presents a very interesting question and it becomes necessary to examine the Constitution and statutes of the United States, as well as the Constitution and statutes of the State of Oklahoma, with reference to taxation of personal property and the respective rights of the Federal Government and the State therein.

Briefs have been filed, citing authorities in support of the contentions of both parties.

By Section 5 of the Act of March 8, 1938, Chapter 44, 52 Stat. 108, 15 U.S.C.A. § 713a—5, Congress provided: "Bonds, notes, debentures, and other similar obligations issued by the Commodity Credit Corporation under the provisions of this Act shall be deemed and held to be instrumentalities of the Government of the United States, and as such they and the income derived therefrom shall be exempt from Federal, State, municipal, and local taxation (except surtaxes, estate, inheritance, and gift taxes). The Commodity Credit Corporation, including its franchise, its capital, reserves, and surplus, and its income shall be exempt from all taxation now or hereafter imposed by the United States, by any Territory, dependency, or possession thereof, or by any State, county, municipality, or local taxing authority; except that any real property of the Commodity Credit Corporation shall be subject to State, Territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed."

Under this section the obligations of the Commodity Credit Corporation shall be deemed and held to be instrumentalities of the government of the United States exempt from Federal, State, municipal and local taxation and the corporation itself, including its franchise, capital, reserves, and surplus, and its income shall be exempt from all taxation, Federal and State.

In Johnson v. Maryland, 254 U.S. 51, 41 S.Ct. 16, 65 L.Ed. 126, in an opinion by Mr. Justice Holmes, the Supreme Court of the United States said that there is an "entire absence of power on the part of the States to touch, in that way at least [by taxation], the instrumentalities of the United States."

In Graves v. New York ex rel. O'Keefe, 306 U.S. 466, 59 S.Ct. 595, 597, 83 L.Ed. 927, 120 A.L.R. 1466, the Supreme Court said, in speaking of federal corporate instrumentality: " * * * And when the national government lawfully acts through a corporation which it owns and controls, those activities are governmental functions entitled to whatever tax immunity attaches to those functions when carried on by the government itself through its departments."

The question that naturally arises is whether in the enactment of the Act of March 8, 1938, known as the Commodity Credit Corporation Act, 15 U.S.C.A. § 713a —1 et seq., designating the Commodity Credit Corporation to be an instrumentality of the government of the United States and exempting said corporation and all of its assets from Federal and State taxes, Congress was acting within its constitutional power.

In Pittman v. Home Owners' Loan Corporation, 308 U.S. 21, 32, 60 S.Ct. 15, 18, 84 L.Ed. 11, 124 A.L.R. 1263, Mr. Chief Justice Hughes, speaking for the court, said: "We assume here, as we assumed in Graves v. New York ex rel. O'Keefe, 306 U.S. 466, 59 S.Ct. 595, 83 L.Ed. 927, 120 A.L.R. 1466, that the creation of the Home Owners' Loan Corporation was a constitutional exercise of the congressional power and that the activities of the Corporation through which the national government lawfully acts must be regarded as governmental functions and as entitled to whatever immunity attaches to those functions when performed by the government itself through its departments. McCulloch v. Maryland, 4 Wheat. 316, pages 421, 422, 4 L.Ed. 579; Smith v. Kansas City Title [& Trust] Co., 255 U.S. 180, 208, 209, 41 S.Ct. 243, 248, 65 L.Ed. 577; Graves v. New York ex rel. O'Keefe, supra. Congress has not only the power to create a corporation to facilitate the performance of governmental functions, but has the power to protect the operations

thus validly authorized. 'A power to create implies a power to preserve'. * * * In this instance, Congress has undertaken to safeguard the operations of the Home Owners' Loan Corporation by providing the described immunity."

■ If, therefore, Congress has the power to create the Commodity Credit Corporation and to designate it as an instrumentality of the government of the United States it naturally follows that it has the power to protect this creation of Congress by granting immunity from State and Federal taxes.

Section 6 of Article X of the Constitution of Oklahoma Okl.St.Ann. provides: "* * * and all property of the United States * * * shall be exempt from taxation."

And in Section 12319, Okl.St.1931, 68 Okl.St.Ann. § 23, it is provided:

"The following property shall be exempt from taxation:

\*        \*        \*        \*        \*

"Third. All property of the United States, and of this State, and of counties and municipalities of this State."

■ We then conclude that the State of Oklahoma would have no power through any of its agencies to tax any property belonging to the United States Government. However, the real contention of the defendants is that this cotton on May 31, 1938, was owned by individual farmers, had taxable situs in Oklahoma County, and that the county assessor of Oklahoma County had the authority to assess such cotton against the individuals owning such cotton on May 31, 1938.

An additional question follows, whether this personal tax will follow the personal property in the hands of a third person, who has acquired title to the property after the assessment date, but prior to assessment, and prior to the issuance and levy of a tax warrant.

■ The taxing authority has the inherent power to provide by statute that the tax shall constitute a lien, and to provide further for the priority of such lien over mortgages and other liens. Many states have found it wise not to exert the utmost of their authority in making taxes a lien on property, and in most instances, no attempt has been made to make taxes on personal property a lien on personal property prior to the levy of a tax warrant.

In State v. National Bank of Commerce, 139 Okl. 134, 281 P. 579, 582, the Supreme Court of Oklahoma said:

"Although the state has power to tax, that tax is not a lien unless made so by the Constitution or statutes. 'A tax levied and assessed upon specific property is not a lien on that or any other property of the owner unless expressly made so by statute.' 37 Cyc. 1138.

"The fact that taxes are made a lien on property does not make the taxes a first lien. '* * * but this preference does not belong to the tax lien unless it is so declared by statute, and a law, for example, which merely enacts that taxes shall be a lien on real property does not make them a first lien.' 37 Cyc. 1144."

In Barbee v. Cowden, 182 Okl. 334, 77 P.2d 669, 670, it was said: "It is the general rule that a general tax assessed and levied upon personal property is not a lien upon the property so assessed and levied against, unless it is so provided by statute. * * * No statute has been cited which makes the personal taxes herein levied a lien upon the property while title and possession remain in the person to whom it was assessed, and we know of no such provision of our statutes."

This rule has been followed in many other decisions by the same court, as follows: J. I. Case Threshing Mach. Co. v. Oates, 27 Okl. 412, 112 P. 980; Fidelity Trust Co. v. Pumroy, 45 Okl. 66, 144 P. 1052; Interstate National Bank v. Pumroy, 45 Okl. 69, 145 P. 416; First National Bank of Comanche v. Young, 155 Okl. 282, 8 P.2d 1108; Algyre v. Seminole County, 156 Okl. 251, 10 P.2d 677.

In Bailey, Sheriff, v. Williamson-Halsell-Frazier Co., 44 Okl. 586, 145 P. 412, an action was brought to enjoin the sheriff from levying a tax warrant upon property of Williamson-Halsell-Frazier Company, which property had been assessed for taxation for the year 1911 as the property of Altus Wholesale Grocery Company. Williamson-Halsell-Frazier Company purchased the property after assessment but before the issuance of the tax warrant. The trial court granted the injunction, and the Supreme Court held that the property in the hands of the purchaser was not subject to the payment of the tax and that the injunction was properly granted.

■ This cotton had a taxable situs in Oklahoma County on May 31, 1938, and

was therefore subject for tax against the individual owner on that date. Prior to May 31, 1938, however, this cotton had been pledged to the Commodity Credit Corporation to secure loans made to individual farmers. The pledge was evidenced by delivery of the warehouse receipts to the Commodity Credit Corporation which had the same legal effect as if the cotton itself had been in the actual possession of the Commodity Credit Corporation.

In First National Bank of Hartshorne v. Neil P. Anderson & Co., 90 Okl. 145, 216 P. 111, 112, it was said:

"It is clear, according to the provisions of section 11112, C.O.Stat.1921, 81 Okl.St. Ann. § 147, the warehouse receipts or tickets represent the property, and the holder thereof is to be considered the actual and exclusive owner to all intents and purposes of the property described in such receipts. This is true, in the absence of evidence qualifying the delivery of the receipts, such as the evidence of the contract of pledge.

"It is plain from the evidence in the instant case that Cothran, in delivering the warehouse tickets to the bank, thereby pledged the cotton represented by the tickets to the bank for the money advanced to him in purchasing the cotton. The rule is well established that the pledgee is entitled to the possession of the property until a full tender of the debt for which it is pledged is made."

Under the authorities in Oklahoma, no tax lien attached to this cotton prior to the actual levy, and therefore no lien existed on it at the time the Commodity Credit acquired its mortgage, and under the decisions of the Oklahoma Supreme Court, any tax lien acquired by levy would be inferior to the lien of the Commodity Credit Corporation.

In Fidelity Trust Co. v. Pumroy, supra, the Supreme Court held, quoting from the syllabus: "A lien for taxes upon the property of the tax debtor is inferior to that of a chattel mortgage lien antedating the time the tax lien attaches."

This rule was adhered to in Interstate National Bank v. Pumroy, supra; First National Bank of Comanche v. Young, supra; Algyre v. Seminole County, supra. The contention, therefore, of the defendants is not supported by the decisions of the Supreme Court of Oklahoma.

In New Brunswick v. United States, 276 U.S. 547, 48 S.Ct. 371, 372, 72 L.Ed. 693, the court had under consideration a tax against real estate in which the United States Housing Corporation held a mortgage on certain city real estate. The New Jersey authorities contended that since equitable title in the real estate was in the purchasers, the lots were taxable regardless of the fact that the housing corporation held a first mortgage thereon, and the court said: "But it is plain, under the doctrine of the Clallam Case, that the City is without authority to enforce the collection of the taxes thus assessed against the purchasers by a sale of the interest in the lots which was retained and held by the Corporation as security for the payment of the unpaid purchase money whether as an incident to the retention of the legal title or as a reserved lien or as a contract right to mortgages. That interest, being held by the Corporation for the benefit of the United States, is paramount to the taxing power of the State and cannot be subjected by the City to sale for taxes."

Numerous authorities are cited by the plaintiff from the Federal courts, sustaining the contention that so long as an instrumentality of the Federal Government has an interest in the property, it cannot be sold by state authorities for taxes without protecting the right of the Federal Government.

This court, therefore, concludes that the cotton owned by the Commodity Credit Corporation and for which it holds warehouse receipts is immune from state and local taxation; that as to the cotton mortgaged to the plaintiff for which it holds warehouse receipts, the lien interest of the Commodity Credit Corporation therein is prior in time and is superior to any claim for local taxation; and, that the plaintiff is entitled to a declaratory judgment so holding.

A declaratory judgment, therefore, will be rendered in accordance with the foregoing opinion and a permanent injunction may issue as prayed in the bill of complaint. Findings of fact, conclusions of law, and a form of judgment consistent with the foregoing opinion may be submitted within fifteen days.