[Civ. No. 5666. Fourth Dist. May 6, 1959.]

ROBERT BURHANS, JR., et al., Appellants, v. COUNTY OF KERN, Respondent.

Baker, Palmer, Wall & Raymond and Oran W. Palmer for Appellants.

Roy Gargano, County Counsel, and Rex R. Mull, Deputy County Counsel, for Respondent.

SHEPARD, J.—This is an action for refund of taxes paid under protest to defendant county of Kern on account of assessments on barley produced by plaintiffs and pledged to the Commodity Credit Corporation as security for advances made to plaintiffs under the federal farm program in the year 1954. The trial court rendered judgment for defendant and plaintiffs appeal.

At the trial the cause was submitted on an agreed statement of facts by which it was stipulated that plaintiffs are farmers and taxpayers of Kern County, California; that defendant, for the fiscal year 1955-1956, assessed each of the plaintiffs, at

a value of $16 per ton, the barley stored in a public warehouse within defendant county, detailed weights of which are set forth in an exhibit attached to plaintiffs' complaint; that prior to the first Monday in March in the year 1955 said barley had been mortgaged by each of the plaintiffs herein to the United States Department of Agriculture, Commodity Stabilization Service, Commodity Credit Corporation, pursuant to a written mortgage contract, a copy of which is attached to the stipulation; that on said first Monday in March, 1955, the market value of said barley was $47.25 per ton and that the total cost to plaintiffs of redeeming said barley from all of the loan and charges against it was $53.99 per ton, or $6.74 per ton more than said market value; that prior to the storage and mortgaging of said barley defendant, through its assessor, represented to plaintiffs that said barley so stored under such Commodity Credit mortgage would not be subject to tax; that after May 16, 1955, defendant caused said barley for the first time to be assessed against plaintiffs and included in the assessment roll which was delivered by the county assessor to the county board of supervisors, sitting as a board of equalization July 5, 1955; that within the time and manner provided by law plaintiffs filed their application with said board of equalization to reduce said assessments; that evidence was duly taken thereon, the matter was continued from time to time and on February 28, 1956, the board made its decision denying said application; that prior to said decision of said board of equalization plaintiffs paid all of the said taxes; and that on April 10, 1956, plaintiffs filed a claim for refund of said taxes, which was on the same day rejected by said board of supervisors.

The document signed by the plaintiffs to the government is entitled ''Producer's Note and Loan Agreement.'' The body of the agreement provides, in part, as follows:

''2. This note evidences a loan made available under a loan program formulated by Commodity Credit Corporation pursuant to the Agricultural Act of 1949, . . .

''4. The producer hereby sells, assigns, pledges, mortgages, and/or hypothecates to the payee named in the producer's note and to any subsequent holder thereof, as collateral security for the payment of the note, the warehouse receipts or other documents representing the commodity described in the Schedule of Pledged Commodity below (hereinafter referred to as the 'pledged commodity.' '')

Plaintiffs present four contentions to this court. The first of these is to the effect that title to said property was on the first Monday in March of 1955 vested in the United States government and that, therefore, since the United States government is exempt from taxation the tax levied against plaintiffs was void.

The California Constitution, article XIII, section 1, provides that all nonexempt property in this state shall be taxed in proportion to its value; that the word "property" includes all matters and things, real, personal and mixed, capable of private ownership except debts secured by liens on land; that "The Legislature may provide, except in the case of credits secured by mortgage or trust deed, for a deduction from credits of debts due to bona fide residents of this State . . ." Plaintiffs contend that ownership in the barley is divided into three parts, to wit, the warehouseman's lien for storage, the government's security for moneys advanced (which is exempt from taxation), the grower's opportunity to redeem (which terminated April 30, 1955). They cite in support of their proposition a number of cases.

Some quotations from these cases appear to be in order as giving the trend of the court's thought on these matters. In *San Francisco* v. *Anderson*, 103 Cal. 69 [36 P. 1034, 42 Am. St.Rep. 98], all the real and personal property owned by the San Francisco stock and exchange board had been assessed and taxes thereon fully paid. A seat in the stock exchange (attempted to be taxed) is a nontransferable privilege "too impalpable to go into any category of taxable property." In *Germania Trust Co.* v. *San Francisco*, 128 Cal. 589 [61 P. 178], involving taxation of solvent credits secured by property exempt from taxation, the court in holding such credits taxable said: "However desirable it may be that taxation should be absolutely equal and uniform, such a result in practice is generally unattainable, and the present constitution, therefore, does not exact this rigid condition in the levying of taxes."

In *Savings etc. Soc.* v. *San Francisco*, 131 Cal. 356 [63 P. 665], again upholding the taxation of solvent credits secured by nontaxable securities, the court said: "We cannot see any reason for holding that because the security happens to be some kind of property exempt by law that the debt secured thereby should also be exempt." In *San Francisco* v. *La Societe Francaise*, 131 Cal. 612 [63 P. 1016], involving similar facts, the court said: "Section 1 of article XIII of the consti-

tution provides that 'all property,' with certain exceptions therein stated, 'shall be taxed in proportion to its value.' It further provides that the word 'property' as used in said 'article and section' shall include 'moneys, credits, bonds, stocks, dues, franchises, and all other matters and things, real, personal, and mixed, capable of private ownership.' The admitted credits or outstanding loans of defendant come clearly within the above constitutional definition of taxable property, and the fact that such loans are secured by pledge of nontaxable personal property in no way affects the question."

*Hunt v. Authier*, 28 Cal.2d 288 [169 P.2d 913, 171 A.L.R. 1379], involving the survival of a widow's and children's cause of action for the wrongful death of the husband and father, merely holds that " 'Generally, the subjects of property comprise all valuable rights or interests protected by law . . .,' " and has little or no possible application to the case at bar.

In further support of their contention that interests in personal property should be divisible for tax purposes plaintiffs cite *Whiting Finance Co. v. Hopkins*, 199 Cal. 428 [249 P. 853], wherein plaintiff sought to recover taxes paid on "solvent credits" in the form of debts secured by conditional sale of contracts of automobiles assigned by dealers to plaintiff. The court therein ruled that the placing of bare legal title in plaintiff for security purposes did not make the "solvent credits" any less taxable. *Sherman v. Quinn*, 31 Cal.2d 661 [192 P.2d 17], involved the effort of a veteran to secure his tax exemption under a conditional contract of sale of real property in which the legal title was vested in the United States Government. In discussing the position of the parties the court said: " 'In a conditional sale, the title in the seller is for security only, to assure the payment of the purchase price. . . . Both in a practical and a legal sense the buyer is the beneficial owner.' " In the case of *Parr-Richmond Industrial Corp. v. Boyd*, 43 Cal.2d 157 [272 P.2d 16], the court held that the plaintiff's interest in certain government-owned real property was possessory only, and that due to the peculiar wording of the contract on delivery of merchantable title (the government being unable to presently deliver such title) plaintiff should properly have been assessed only on a possessory interest. It must be noted in connection with this case that it pertained to real property and that the assessment of possessory interests in real property, as distinguished from personal property, has long been recognized. (*Kaiser Co. v. Reid*, 30 Cal.2d 610 [184 P.2d 879]; *Blinn Lbr. Co. v. County of Los*

*Angeles*, 216 Cal. 474 [14 P.2d 512, 84 A.L.R. 1304] ; *DeLuz Homes, Inc.* v. *County of San Diego*, 45 Cal.2d 546 [290 P.2d 544].) We are of the opinion that these authorities do not materially aid plaintiffs.

In clarification of the rules referred to in the last above cited cases, defendant refers to the rulings in a number of cases. In *Weyse* v. *Crawford*, 85 Cal. 196 [24 P. 735], in which it was sought to charge a warehouseman with ownership of merchandise and grain for tax purposes, the court in rejecting the tax liability said: "It is true that, ordinarily, possession of personal property is *prima facie* evidence of ownership; but it is only *prima facie* so; . . .

"Possession by a factor, who does not purchase on his own account, is not evidence of ownership."

In *Standard Auto Sales Co.* v. *Lehman*, 43 Cal.App. 763 [186 P. 178], concerning the question of whether or not a vendor under a conditional contract of sale could have a lien for the unpaid purchase price, the court said: ". . . the existence of a lien and ownership as to the same property in the same party at the same time is not in accordance with the legal conception of these terms. A person cannot have a lien upon personal property of which he is the owner."

In *Timm Aircraft Corp.* v. *Byram*, 34 Cal.2d 632, 636, 638 [213 P.2d 715], the question of whether or not plaintiff was the owner, for tax purposes, of money advanced by the United States into a bank account with certain controls thereof retained in the United States, was considered. In holding the property to be that of the plaintiff therein for tax purposes the court said: "In the absence of an express congressional grant of immunity, the tax in question may be avoided only if it is imposed on property of the United States or is so measured by such property as to be in substance and effect a tax thereon. . . .

"The imposition of reasonable restrictions upon the use of property, even the retention of legal title to secure performance of an executory contract, does not make the United States the owner of that property for tax purposes."

In *General Dynamics Corp.* v. *County of Los Angeles*, 51 Cal.2d 59 [330 P.2d 794], the county attempted to tax certain personal property wholly owned by the United States, but used by plaintiff in performing governmental contracts. The court in rejecting defendant county's attempt to tax the property stated, respecting the language of article XIII, section 14 of the California Constitution: "Under these provi-

sions the Legislature may provide for the taxation of 'all forms of tangible personal property' and 'any legal or equitable interest therein.' We have concluded, however, that the Legislature has not provided for the taxation of limited interests in tangible personal property. It has not defined personal property as including a right to its possession as it has real property (see Rev. & Tax. Code, §§ 104, 107), and this omission reflects not merely a lack of detail, but a consistent pattern of taxing personal property as an entity or not at all.''

In the recent case of *Thompson* v. *Arnold* (1958), ——— Ind. ——— [147 N.E.2d 903] the supreme court of Indiana had before it a problem substantially identical with that in the case at bar. The Commodity Credit Corporation of the United States, Department of Agriculture, made advances to Thompson on his 1955 corn crop. Thompson signed a producer's note, supplemental loan agreement, and commodity chattel mortgage, all of which described the transaction as a loan and a mortgage. Thompson claimed the transaction was in truth a sale because (1) there was no absolute obligation on his part to repay the debt; (2) the note would be satisfied by payment on delivery to the Commodity; (3) risk of loss was in the Commodity Credit Corporation; (4) he had the election to report and pay income taxes on the amount received from Commodity Credit Corporation; (5) the market value of the corn was several thousand dollars less than the amount received on the loan; and last, the corn was placed under seal by the government, which retained a certain measure of possessory control thereover. The court rejected all of these contentions and ruled that the corn in question was taxable property of the appellant. The case is well reasoned, and we agree with the conclusions there reached.

*County of Fresno* v. *Commodity Credit Corp.* 112 F.2d 639 and *Commodity Credit Corp.* v. *County of Oklahoma,* 36 F.Supp. 694 are both cases which treat of the subject of priority of tax liens as between the county and the federal government, and the type of matter under discussion in the case at bar is not discussed. The case of *Goodrich* v. *Bowers,* 167 Ohio St. 403 [149 N.E.2d 248] simply held that under Ohio Revised Code, sections 5701.08 and 5709.01, agricultural products in storage subject to control of the United States are ''not used in business in this state,'' within the meaning of said tax statutes. Because of the material difference between the Ohio statute and the California statute the case is not in point.

We are satisfied that the Legislature of California has not thus far provided for divisibility of personal property interests in taxation in the manner contended for by plaintiffs. We are further satisfied that the true owners for tax purposes in the case at bar are the plaintiffs, and not the United States government. Therefore, the barley was not exempt from taxation.

The second contention of plaintiffs is that the board of supervisors sitting as a board of equalization failed to equalize the taxes consistent with the provisions of the Constitution and that, therefore, the tax levied was unequalized and void.

It is first to be noted that the record contains no indication that the plaintiffs objected to the continuances had before the board of equalization, they made no such claim of invalidity in their complaint on file herein, and such contention was not made in their claim for a refund. In this connection section 5104 of the Revenue and Taxation Code provides "no recovery of taxes shall be allowed in any such action upon a ground not asserted in the claim for refund." Furthermore, unsecured personal property taxes are based on rates adopted for the previous year's secured personal property tax rate. (Const., art. XIII, § 9a; Rev. & Tax. Code, § 2905; *Abrams v. San Francisco*, 48 Cal.App.2d 1 [119 P.2d 197].) Under Revenue and Taxation Code, section 2902, the assessment of unsecured property is complete, for the purpose of enforcing collection, when the assessor has made a record in writing of the assessment in such form as the board of supervisors may prescribe. Full opportunity was given to plaintiffs to be heard by the board of equalization and we consider *Londoner v. Denver*, 210 U.S. 373 [28 S.Ct. 708, 52 L.Ed. 1103] to be not in point for the reason that the basis of the court's ruling in that case was that the taxpayers were not afforded any opportunity to be heard on their objections. Plaintiffs also cite *Savings & Loan Soc.* v. *San Francisco*, 146 Cal. 673 [80 P. 1086] and *Universal Consol. Oil Co.* v. *Byram*, 25 Cal.2d 353 [153 P.2d 746]. The first of these cases rejects the claim of invalidity against an assessment of solvent credits. The second simply holds that at least a majority of the board must act upon the evidence presented at the equalization hearing, and in that case only two of the five members so acted. Thus, the taxpayer was denied due process. Nothing in either of these two cases supports plaintiffs' contention. In addition, we are unable to discern how the

delay in the action of the board of equalization caused plaintiffs to be legally harmed. (*Buswell* v. *Board of Supervisors,* 116 Cal. 351, 354 [48 P. 226]. We are satisfied that the action of the board of equalization in no way detracted from the validity of the assessment.

Plaintiffs' third contention is that the county was estopped to collect the tax because the county assessor at one time advised plaintiffs that the barley in question would not be subject to tax. First, we find nothing in plaintiffs' complaint nor in the claim to the board of supervisors which shows that plaintiffs' actions would have been different had the assessor not made such a statement. Nor do we find any pleading or proof of legal injury, and the general rule is that estoppel when relied upon must be both pleaded and proved as to all its elements.

"The existence of an estoppel in pais is a question of fact. When plaintiff's cause of action depends upon such estoppel, it must be pleaded in the complaint with sufficient accuracy to disclose the facts relied upon and the plaintiff must prove all of the elements constituting it." (*Judelson* v. *American Metal Bearing Co.,* 89 Cal.App.2d 256, 266 [200 P.2d 836]; *Fleishbein* v. *Western Auto S. Agency,* 19 Cal. App.2d 424, 427 [3] [65 P.2d 928].)

Furthermore, while it is true that in some cases it is possible for the government to be estopped such is not the general rule, and ordinarily in the collecting of taxes the government cannot be estopped from collecting taxes because of an erroneous ruling of an administrative official. The true rule in this respect would appear to be that the taxpayer will be assessed only for the amount he would have paid originally, had the administrative ruling been correct. (*United States Fid. & Guar. Co.* v. *State Board of Equalization,* 47 Cal.2d 384, 394 [303 P.2d 1034]; *Goodwill Industries* v. *County of Los Angeles,* 117 Cal.App.2d 19, 27 [11] [254 P.2d 877].) We are unable to discover how there could have been any difference in the amount of tax to be paid in this case had the assessor not made the erroneous statement. We do not find any basis for lawful estoppel.

Plaintiffs' fourth contention is that they elected to treat the proceeds from the government loan as income and paid income taxes thereon, and that they should not, therefore, be required to pay the ad valorem tax. This identical contention was presented in the case of *Thompson* v. *Arnold, supra,* and rejected. The court therein quotes at length from

*Stewart* v. *United States* (1951), 100 F.Supp. 221: " 'Usually, and in the absence of election by a taxpayer, amounts received as loans from the Commodity Credit Corporation are not income. They represent loans, and a loan does not ordinarily result in the borrower's receipt of income. By the remedial provisions of section 123(a), *supra,* such amounts may be considered and reported and treated as income for the year of their receipt, but only if the taxpayer so elects . . .'

"The privilege granted the producer of paying taxes on the money received from such loan is a matter of statutory indulgence, which does not change the express character of the transaction."

In *City Investments, Ltd.* v. *Johnson,* 6 Cal.2d 150, 153 [56 P.2d 939] wherein plaintiff sought to recover taxes paid under protest because of claimed double taxation, the court said: "The fact that the two contemporaneous tax charges then overlapped, in whole or in part, was not from a taxing standpoint constitutionally objectionable."

In *Weber* v. *County of Santa Barbara,* 15 Cal.2d 82, 87 [6] [98 P.2d 492], in which plaintiff sought to recover taxes alleged to have been unlawfully collected by reason of alleged overlapping of ad valorem and income taxes the court said, in referring to the above case, ". . . the cited case is also authority for the settled principle that the simultaneous imposition of an *ad valorem* tax on property and of a tax measured by the income from such property, does no violence to constitutional inhibitions against double taxation."

Furthermore, we are unable to discover anything in the record before us which factually supports plaintiffs' contention that they did so make such a return of income tax. It is not contained in either the complaint nor the stipulated statement of facts, and we are not permitted to consider matters outside the record. (*Kovacik* v. *Reed,* 49 Cal.2d 166, 170 [4] [315 P.2d 314].)

On the record before us we are compelled to hold that the assessment was made in accordance with law, and the judgment of the trial court was correct.

The judgment is affirmed.

Griffin, P. J., and Mussell, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 1, 1959. Schauer, J., was of the opinion that the petition should be granted.