## IRON MOUNTAIN OIL CO. v. ALEXANDER, Collector of Internal Revenue.

Circuit Court of Appeals, Tenth Circuit. January 4, 1930.

No. 121.

Henry S. Conrad, of Kansas City, Mo. (L. E. Durham and Hale Houts, both of Kansas City, Mo., on the brief), for appellant.

Ralph E. Smith, Sp. Atty., Bureau of In-

ternal Revenue, of Washington, D. C. (Roy St. Lewis, U. S. Atty., of Oklahoma City, Okl., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., on the brief), for appellee.

Before LEWIS, PHILLIPS, and Mc-DERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge. The appellant sued the appellee to recover the sum of $68,896.13, excess profit tax for the year 1917, paid under protest on March 29, 1924. The lower court denied plaintiff relief except as to the sum of $2,428.83, which is not here involved.

There is little or no dispute as to the facts. The Revenue Act of October 3, 1917 (40 Stat. 300), was expressly retroactive to January 1, 1917. Appreciating that many taxpayers kept their books on a fiscal year basis—that is, a year ending other than on December 31st—the act provided for the ascertainment of the income of the fractional part of the year 1917, by proportioning the income of the fiscal year. The language of section 200 of the act, reads: "The term 'taxable year' means the twelve months ending December 31, excepting in the case of a corporation or partnership which has fixed its own fiscal year, in which case it means such fiscal year. The first taxable year shall be the year ending December 31, 1917, except that in the case of a corporation or partnership which has fixed its own fiscal year, it shall be the fiscal year ending during the calendar year 1917. If a corporation or partnership, prior to March 1, 1918, makes a return covering its own fiscal year, and includes therein the income received during that part of the fiscal year falling within the calendar year 1916, the tax for such taxable year shall be that proportion of the tax computed upon the net income during such full fiscal year which the time from January 1, 1917, to the end of such fiscal year bears to the full fiscal year."

Every Revenue Act from 1913 to 1926 carries the same plan of proportioning for fiscal years. In substance, the appellant asks this court either to enact a new statute, or to declare the existing statute unconstitutional. We can do neither.

Briefly the facts are: Since its incorporation in 1907, the books of the company had in fact been closed on March 31st of each year. The by-laws fixed the time of the annual meeting as the third Tuesday in April. Habitually, the books were closed the preceding month. It is said that there was no corporate action authorizing this practice; the practice continued for 12 years, and no corporate objection was registered until May 12, 1919, when an effort was made to get away from this then accrued tax by a resolution adopting the calendar year basis, and directing accountants to revise and correct the books from 1907 on. The corporation filed income tax returns in 1914; in 1915; in 1916; in 1917; and two amended returns on September 18, 1917, all on a fiscal year basis. The law deals with facts; and, if any corporation ever "fixed its own fiscal year," this one did.

It appears that in the fiscal year ending March 31, 1917, the taxable income of the corporation was $1,086,724.95. The tax was assessed for the first three months of 1917 on three-twelfths of this amount, as provided by statute. It further appears that most of this income was earned in 1916, in fact, all but $73,203.24; a considerable part of the income for the fiscal year came from the profit on the sale of certain properties in 1916.

Then came a series of unsuccessful steps to avoid the payment of this tax. The first was a refusal to file any return for the fiscal year ending March 31, 1917, as required by the October 3, 1917, law. Then came the resolution of May 12, 1919, undertaking to revise the books of the company back to 1907; and on August 30, 1919, the company undertook to file amended calendar year returns for the same years it had theretofore returned on a fiscal year basis, and upon which taxes had been paid—for the years 1914, 1915, and 1916; and also for 1917. This was done, it is said, upon the recommendation of some examiner, but that has no bearing. No action was taken by the department on these belated amended returns. On October 19, 1922, at the insistence of the collector, a corporation excess profits tax return, as provided by the 1917 act, was filed for the fiscal year ending March 31, 1917, which disclosed exactly the same net income ($1,086,724.95) as had been returned by the corporation voluntarily, in its fiscal year return for the 1916–1917 year, on September 18, 1917. The tax was then paid under protest, and this action filed.

■ Since it is undebatable that the collector followed the statute, it follows that the action must fail unless the statute is unconstitutional. A provision similar to the one under attack has been in every tax law passed; it has been applied by the administrative department for 16 years; there must have been

hundreds of thousands of taxpayers who have paid taxes under this or a similar provision. If doubt existed, these circumstances would and should have a strong bearing. Swigart v. Baker, 229 U. S. 187, 33 S. Ct. 645, 57 L. Ed. 1143; Blanset v. Cardin, 256 U. S. 319, 41 S. Ct. 519, 65 L. Ed. 950. But there is no doubt here that we can see.

Appellant first claims that the statute taxes it for profits made in 1916, while not in terms declaring such profits taxable income. The short answer is that the facts are otherwise. The act taxes no 1916 income; it taxes income for 1917 only, but, where a taxpayer's books are not kept on a calendar basis, it measures the fractional part of the 1917 year by a proportionate method.

██ It is then claimed that Congress has no constitutional power to measure 1917 income by the circumstances of 1916. Doubtless Congress could have assessed fractional years on a monthly basis, or have adopted some other method. That is not the question; the question is, was the plan adopted so capricious and arbitrary as to fall under the ban of the Fifth Amendment. Not only do we answer that in the negative, but it would seem that the plan adopted is the fairest and most practicable scheme available. The facts are that business in this country is generally done on a yearly basis, and not a monthly or weekly one. The year is the unit, and not a day or an hour. The only fair thing to the taxpayer generally was to legislate in light of this settled business practice. Any other plan would have required many business concerns to inventory monthly instead of yearly; and, when operating retrospectively, as this statute does, would have been impossible. If the sale giving rise to the large profit in this case had been made in January of 1917, the plaintiff here would doubtless have been righteously indignant if the government had undertaken to segregate it to 1917. The power of Congress to adopt any reasonable plan of measuring a tax is so well settled that citations of authorities are a work of supererogation. But the curious may examine Stockdale v. Atlantic Insurance Co., 20 Wall. 323, 331, 22 L. Ed. 348, where the Supreme Court, at that early date, said: "The right of Congress to have imposed this tax by a new statute, although the measure of it was governed by the income of the past year, cannot be doubted; much less can it be doubted that it could impose such a tax on the income of the current year, though part of that year had elapsed when the statute was passed. The joint resolution of July 4th, 1864, im-

posed a tax of five per cent. upon all income of the previous year, although one tax on it had already been paid, and no one doubted the validity of the tax or attempted to resist it." And Brushaber v. Union Pac. R. R., 240 U. S. 1, 36 S. Ct. 236, 60 L. Ed. 493, L. R. A. 1917D, 414, Ann. Cas. 1917B, 713, where the above paragraph is quoted and followed; and Southern Pacific Co. v. Lowe, 247 U. S. 330, 38 S. Ct. 540, 62 L. Ed. 1142, where the proportionate method was approved; and Flint v. Stone Tracy Co., 220 U. S. 107, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312, for an extended discussion of the limits of legislative taxing power. See, also, United States v. Robbins, 269 U. S. 315, 46 S. Ct. 148, 70 L. Ed. 285, where it was held that a tax on a husband's income could be measured by the community income, in which the wife had an interest; and Bromley v. McCaughn, 280 U. S. 124, 50 S. Ct. 46, 74 L. Ed. ——, where a tax on the privilege of giving, measured by the value of the property given, was upheld, although an unapportioned tax on the property itself could not of course have been sustained. The method adopted apportioning the tax for fiscal years "does not preclude the assumption that the Legislature, in enacting the taxing statute, did not act arbitrarily or without the exercise of judgment or discretion which rightfully belong to it," to use the language of Mr. Justice Stone in Stebbins v. Riley, 268 U. S. 137, 45 S. Ct. 424, 427, 69 L. Ed. 884, 44 A. L. R. 1454.

In opposition, appellant cites Mason v. Routzahn, 275 U. S. 175, 48 S. Ct. 50, 72 L. Ed. 223; Nichols v. Coolidge, 274 U. S. 531, 47 S. Ct. 710, 71 L. Ed. 1184, 52 A. L. R. 1081; Lewellyn v. Frick, 268 U. S. 238, 45 S. Ct. 487, 69 L. Ed. 934; Untermyer v. Anderson, 276 U. S. 440, 48 S. Ct. 353, 72 L. Ed. 645. These cases establish the proposition that Congress may not tax something beyond its power, under the guise of reaching something within its power. These cases have no bearing unless we adopt the other fallacy, that by this act Congress undertook to reach 1916 income. It did not. It simply adopted a sensible and practicable method of measuring 1917 income. It might further be noticed that the point relied on by appellant in the case of Lewellyn v. Frick, supra, was but mooted there; it was decided, and decided contrary to appellant's position and the language relied on, in Chase Nat. Bank v. United States, 278 U. S. 327, 331, 49 S. Ct. 126, 73 L. Ed. 405.

██ The plaintiff contends further that the profit made in 1916 from the sale of part of

its holdings became capital assets before 1917. That is but another method of stating its first proposition. Lastly, it is rather faintly argued that the plaintiff should escape this tax because it failed to file the return as required by law; that therefore it is not within the language: "If a corporation * * * prior to March 1, 1918, makes a return, * * *" etc. No return was filed between October 2, 1917, and March 2, 1918. Two answers suggest themselves. First, a return was filed, under the then existing laws, for the fiscal year in question, on September 18, 1917, which was "prior to March 1, 1918," and therefore within the exact letter of the statute. This, it is true, was prior to the passage of the statute, and it was held in Updike v. United States (8 C. C. A.) 8 F.(2d) 913, that the October 3, 1917, Act contemplated additional returns. But certainly it cannot be seriously argued that a tax liability can be evaded by the simple expedient of failing to file a return. The phrase "if a corporation or partnership, prior to March 1, 1918, makes a return covering its own fiscal year" is used to identify fiscal year concerns, and not to exempt from taxation those not filing returns. Section 4 of the October 3, 1917, Act (40 Stat. 302), dealing with the 4 per cent. income tax, uses the identifying phrase: "If it has fixed its own fiscal year." The two sections come to the same thing. If it be true, which we need not decide, that this tax could have been avoided by filing a calendar year return prior to March 1, 1918, the answer is that no calendar year return was filed prior to that date. The contention of counsel comes to this: In his brief in this court he states that the act in question "required an additional and further return for a fiscal year ending in 1917," and cites Updike v. United States, supra, which in fact holds that section 1001 of the law (40 Stat. 325) requires all taxpayers liable thereunder to file a return. Conceding then its duty to make a return, the appellant sets up its failure to make one as a reason for recovery. The contention answers itself.

■ For a number of years, and for its own purposes, the plaintiff was on a fiscal year basis. It made two returns for the year ending March 31, 1917, on a fiscal year basis, under the 1916 statute. It cannot retroactively change its basis with the passage of each Revenue Act, as past events may advantage it so to do; a taxpayer may not blow hot and cold with his government.

The judgment of the trial court is right, and is affirmed.