## MOMSEN–DUNNEGAN–RYAN CO. v. HELVERING, Com'r of Internal Revenue.

### No. 5680.

Court of Appeals of the District of Columbia.
Dec. 18, 1933.

Rehearing Denied Jan. 22, 1934.

J. S. Y. Ivins and Richard B. Barker, both of Washington, D. C., for appellant.

Sewall Key, G. A. Youngquist, C. M. Charest, John D. Kiley, and S. Dee Hanson, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

HITZ, Associate Justice.

The applicable statutes are the Revenue Acts of 1921 and 1924 (42 Stat. 227, 255; 43 Stat. 253, 284, 26 USCA § 986 (a) (5). Section 234 (a) (5) of each of those acts allows a corporation to deduct from its gross income "debts ascertained to be worthless and charged off within the taxable year (or in the discretion of the commissioner, a reasonable addition to a reserve for bad debts)."

This alternative method of return, by reserving for bad debts, was first permitted by the 1921 act and was covered by a subsequently issued regulation of the Department (article 151 of Treasury Regulation 62).

In this regulation the Commissioner provided that regardless of previous practice the taxpayer might thereafter elect between the two methods, but having elected for 1921 would be required to abide his election in later years, unless permission to change to the alternative method should be granted by the Commissioner.

The Revenue Act of 1921 was effective November 23, 1921, and the Commissioner's regulation was published February 15, 1922.

This petitioner, as the Board found, filed its return March 2, 1922, for the year 1921, and at that time did not know of the regulation giving the option as to the two methods of return.

It therefore contends that in using the charge-off method it cannot be held to have made an election, since it would be unfair to say that it had made a choice between alternatives which it did not know existed, and in justification of its failure to know of the opportunity afforded by the new regulation, it points out that it is located in Texas and the time between the publishing of the regulation and the filing of its return was but two weeks.

In deciding against this claim of the petitioner the Board said:

"The fact that the petitioner had no actual knowledge of its right under the above statute and regulation at the time of making its return for 1921, if such be the fact, cannot excuse it from the consequences of its act.

"That act constituted an election of the method pursued in claiming its bad debt deduction, and that method so elected could not thereafter be changed without first obtaining permission of the Commissioner.

"One who purports to act under a law, and claims the benefits conferred, cannot plead ignorance of the law to avoid a burden imposed, and the same rule applies to regulations promulgated pursuant to and having the force and effect of law."

We regard this statement of the Board as merely a recognition of the familiar maxim that "ignorance of the law excuses no one."

But there are cases enough in which equity will relieve against the harshness of this rule under proper circumstances.

Thus, a person who, though knowing his facts, has acted in misapprehension of his rights, will not be held to an election so

made, in the absence of an estoppel. Watson v. Watson, 128 Mass. 152.

And in Standard Oil Co. v. Hawkins, 74 F. 395, 33 L. R. A. 739, the Circuit Court of Appeals for the Seventh Circuit held that where a choice of two rights or remedies is open and a party pursues one under the impression that the law affords him no other, a court of equity will ordinarily interfere to permit him to change his position.

This rule has been recognized and applied in tax cases both by the Board and by the courts.

As in .Dexter Sulphite Co. v. Com'r, 23 B. T. A. 227, the Board, in speaking of the presumption of election from pursuing one of several remedies, held that no election is presumed where the alternative remedies were unknown.

And in Lucas v. Sterling, 62 F.(2d) 951, it was held by the Court of Appeals for the Sixth Circuit that there must be opportunity for free choice in order to constitute a binding election.

We would, therefore, in a proper case be disposed to hold that a return filed by a distant taxpayer within two weeks of the promulgation of a lawful regulation presenting new provisions of a taxing statute, but in ignorance of its terms, ought not to bind the taxpayer, if thereafter, and as soon as he learns of its provisions, he takes steps to correct or revise his earlier return.

But this is not such a case, first, because the statute of 1921 itself gave the new privilege, and petitioner does not contend that it did not know, or was not bound to know, of the new rights which the statute gave in respect of the matter in question when he filed his return for that year.

And moreover, even assuming he acted in ignorance of the terms of the statute, he at no time thereafter even when informed of the change effected both by the statute and the regulations, applied to the Commissioner for leave to correct or amend his return.

It is true that in subsequent years he did adopt the reserve-for-bad-debts method, but the right of using this method for 1921 was lost by the adoption of the charge-off method for that year, as under the terms of the regulations that was the test year.

The petitioner at no time either sought or obtained permission to change the method adopted in its return for 1921.

If it had done so within a reasonable time after the filing of that return, and had been denied that privilege by the Commissioner, its case would be stronger here, but whatever its rights might have been in that event it is obvious that it lost them when without notice, protest, or application to amend, it allowed its return for 1921 to remain on file as rendered.

Affirmed.