EULOGIA G. DE ROIG, Petitioner, *v.* TAX COURT OF PUERTO RICO, Respondent. J. ALEJANDRO ROIG, Petitioner, *v.* SAME. ANTONIO ROIG, Petitioner, *v.* SAME.

Nos. 57, 58, and 59. Argued November 5, 1945.—Decided November 29, 1945.

James R. Beverley, R. Castro Fernández, and J. López Baralt, for petitioner. E. Campos del Toro, Attorney General, and A. D. Marchand Paz for intervener, Treasurer of Puerto Rico, respondent in the main proceeding.

Mr. Justice Snyder delivered the opinion of the court.

Act No. 20 of December 3, 1942,[1] provided for increased rates of income taxation, particularly in the surtax brackets (§§ 3, 4, amending §§ 12, 13 of the Income Tax Act), and recited that (§ 11) "it shall take effect from July 1, 1942 . . ."

J. Adalberto Roig, Antonio A. Roig, and Eulogia de Roig made their 1942 returns on a calendar year basis. They first divided their incomes by two; then they allocated half as income earned from January 1 to June 30; finally, they calculated the tax for that half-year period at the rates provided in §§ 12 and 13 prior to passage of Act No. 20.[2] In the same way, the taxpayers allocated the other half of their incomes to the second half of 1942, but calculated the taxes thereon pursuant to the new rates established in Act No. 20.

After taking the deductions and credits allowed by law, the Roigs reported that their net taxable incomes for 1942 were $156,779.32, $154,310.45, and $41,521.28, respectively. By calculating their taxes in the manner indicated herein,

[1] Laws of P. R., Special Session, 1942.

[2] Act No. 159, Laws of P. R., 1941; Act No. 23, Laws of P. R., 1941, Special Session.

**420**

they paid $73,569.08, $73,406.13, and $8,344.05 as their 1942 income taxes. Thereafter, the Treasurer notified them with deficiencies of $18,246.98, $18,155.53, and $5,845.90.

The basis of these deficiencies is the contention of the Treasurer that the taxpayers should have calculated their taxes by (a) taking income for the year as a whole; (b) calculating the tax at the previous rate, and also at the new rate; (c) dividing each of these figures by two; and (d) adding the two figures thereby obtained. The Tax Court sustained the action of the Treasurer. We granted certiorari to review the decisions of the Tax Court.[3]

■■ At the threshold of the case, we find a major flaw in the position of the taxpayer. There is nothing in the Income Tax Act or its amendments which permits him arbitrarily to divide his annual income into two exact halves and to report one-half as earned during the first half of the year and the other half as earned during the second half. On the contrary, our Act, like the Federal Act, is predicated on an *annual* earning period. §§ 3(a), 14(b), Income Tax Act.[4] With exceptions not relevant here, both the specific pro-

[3] As these three cases all involve the same question, the taxpayers are here-inafter referred to in the singular.

[4] Section 3(a) reads in part as follows:

"The term 'taxable year' means the calendar year, or the fiscal year ending during each calendar year, upon the basis of which the net income is computed under Sections 14 or 30. The term 'fiscal year' shall mean an accounting period of twelve months ending on the last day of any month, other than December. . . The first taxable year, for the purposes of this Act, shall be the calendar year 1942, . . ."

Section 14(b) reads in part as follows:

"The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; . . . If the taxpayer's annual accounting period is other than a fiscal year as defined in Section 3 or if the taxpayer has no annual accounting period or does not keep books, the net income shall be computed in the basis of the calendar year."

Sections 12 and 13 are to the same effect. In providing for the rates of taxation, they have always levied them "for each taxable year." And § 16 allows deductions for expenses paid or incurred "during the taxable year."

visions and philosophy of the Income Tax Act make it clear that the flow of income is chopped off and measured for tax purposes between two points of time covering a full year, be it annual or fiscal (*Heiner* v. *Mellon,* 304 U. S. 271, 275; 2 Mertens, Law of Federal Income Taxation, § 12.06, pp. 137–8; § 13.01, pp. 360–63; § 13.07, p. 370).

The substance of the taxpayer's argument is that, merely by making Act No. 20 retroactive to July 1, 1942, the Legislature meant to permit a calendar year taxpayer to calculate his 1942 tax in two segments using a period of accounting— a half-year—which was previously unknown to the Income Tax Act. This would, indeed, be a drastic departure from the annual period which has always been contemplated by the statute. And the net effect in most, if not all, cases, particularly with reference to surtaxes, would be to reduce taxes for 1942, in the teeth of the provisions of Act No. 20 specifically raising such rates for that taxable year.[5]

We think the Legislature intended no such *brutum fulmen.* Nor is it inexorably required, as Roig contends, by the provision in § 11 that Act No. 20 shall take effect July 1, 1942. Section 11 must be read together with and in the light of other Sections of the Income Tax Act in order to ascertain its true meaning and purpose. (Section 18, Civil Code, 1930 ed.; *Puerto Rico Ilustrado, Inc.* v. *Buscaglia, Treas.,* 64 P.R. R. 870, 894; *Ex parte The Public National Bank of New York,* 278 U. S. 101, 104; *United States* v. *Katz,* 271 U. S. 354, 357.) As thus construed, we find nothing in § 11 striking from the Income Tax Act §§ 3(*a*), 14(*b*) and the other Sections which provide for an annual accounting. Rather, reading § 11 together with the rest of the Act, we find the interpretation

---

[5] Why the method used by Roig in calculating his 1942 taxes would result in a decrease rather than an increase in taxes is obvious: even at the higher rates provided in Act No. 20, the surtax rate for half of $50,000 is less than the surtax rate for $50,000 at the old rates. One cannot use the route of making two half-year returns for annual income in order to drop into a lower surtax bracket.

of the Treasurer reasonable in that it harmonizes them giving effect both to § 11 and the other Sections in question.

As already noted, under the method of the Treasurer, income for 1942 is taken as a whole; the tax both at the old and the new rates is calculated thereon; each of these figures is divided by two; and the sum of these two figures represents the tax for the year—half at the old rate, half at the new. On the other hand, the taxpayer's method of calculation, based on using a fraction of a year in order to determine the surtax bracket into which the taxpayer fits, would fly in the face of §§ 3 (a) and 14 (b), which have always been in our Act.

In support of his position, the taxpayer cites cases to the effect that when two Sections of a statute are in conflict, the later Section must prevail—here, § 11, as against § 21 of Act No. 20.[6] But since we do not find these Sections in irreconcilable conflict, these cases are inapposite.

██ Section 10(a) of the Act specifically provides for the same result we have reached when the taxpayer, reporting on a fiscal year basis, is confronted with two tax laws providing different rates for portions of the same fiscal year.[7] Our statute contains no such provision for a calendar year

---

[6] Section 1 is § 3(a) of the Income Tax Act; it was amended by Act No. 20 for grammatical and date purposes.

[7] Section 10 (a) reads as follows:

"If the taxpayer makes return for a period beginning in one calendar year (hereinafter in this subdivision called 'first calendar year') and ending in the following calendar year (hereinafter in this subdivision called 'second calendar year') and the law applicable to the second calendar year is different from the law applicable to the first calendar year, then this tax under this title for the period ending during the second calendar year shall be the sum of: (1) the same proportion of a tax for the entire period determined under the law applicable to the first calendar year and at the rate for such year, which the portion of such period falling within the first calendar year is of the entire period, and (2) the same proportion of a tax for the entire period determined under the law applicable to the second calendar year and at the rates for such year, which the portion of such period falling within the second calendar year is of the entire period."

taxpayer. Roig therefore contends that the failure of the Legislature to provide specifically by statute for such treatment of calendar year taxpayers prevents that result here.

If the Legislature had included calendar year taxpayers in § 10(a), this litigation would never have arisen. But our statute was substantially copied from the Federal Act. And it has never been necessary for the Federal Acts to contain such a provision for calendar year taxpayers in view of the fact that Congress customarily makes Income Tax Acts retroactive to January 1. (2 Mertens, *supra*, § 13.23, p. 391, and 1945 Supplement thereto, p. 144 *et seq.*; 4 Paul & Mertens, Law of Federal Income Taxation, § 40.30, p. 621.) There could therefore never be any litigation like the instant case under the Federal Acts.[8]

When our Legislature varied the Federal custom by enacting a statute retroactive to a date other than January 1, it could have avoided this litigation by broadening § 10(a) to include calendar year taxpayers. Nevertheless, for the reasons already indicated, we are of the view that the method of the Treasurer in calculating the tax herein was proper. While it would have been helpful if the Legislature out of an abundance of caution had specifically so provided, we are not convinced that by its failure to do so the Legislature meant to abandon the principle of an annual return and to permit two fractionated returns for 1942.[9]

The decision of the Tax Court will be affirmed.

---

[8] *Iron Mountain Oil Co.* v. *Alexander*, 37 F.(2d) 231 (C.C.A. 10, 1930), simply holds that the Federal equivalent of § 10 (a) is valid; there is no language or intimation in it that in the absence of § 10 (a) the same result cannot be reached.

[9] We note in passing that even if the method advocated by the taxpayer were permissible, he would be required to show a true calculation of his income as actually earned for each of the two six-month periods; he certainly could not, as he did here, simply divide the income for the whole year into two halves.