## KEELER v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4009.

United States Court of Appeals
Tenth Circuit.
March 8, 1950.

Stanley L. Drexler, Denver, Colo. (Richard M. Davis, Denver, Colo., and Laurence Graves, New York City, on the brief), for petitioner.

Ellis N. Slack,Washington, D. C. (Theron Lamar Caudle, Assistant Attorney General, Lee A. Jackson and Hilbert P. Zarky, Special Assistants to the Attorney General, on the brief), for respondent.

Before BRATTON, MURRAH and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

This is a petition to review a decision of the Tax Court of the United States entered June 22, 1949, refusing to permit petitioner to withdraw a war loss claimed for the year 1942 under the provisions of the Internal Revenue Code, 26 U.S.C.A. § 127. The petitioner sought to accomplish the withdrawal by filing an amended income tax return for the year 1942 which return did not include the claim.

Prior to 1942, Frank W. Keeler, hereinafter referred to as the taxpayer, purchased at a cost of $30,676.25 bonds of the Philippine Railway Company having a par value of $141,000.00. The railway company was incorporated under the laws of Connecticut. It owned and operated railway properties only on the islands of Cebu and Panay in the Philippine Islands. These islands were seized by the Imperial Japanese Government on April 8 and 9, 1942. The taxpayer filed his income tax return for the year 1942 in April of 1943, pursuant to an extension of time authorized for that purpose.

In this return he claimed a war loss deduction for the bonds in the sum of $14,701.25. On April 19, 1943, an amended return was filed in which the total cost of the bonds was claimed as a war loss under the provisions of the aforesaid statute. In April, 1945, a second amended return for the year 1942 was filed but this reflected no change in the war loss claim.

The forgiveness features of the Current Tax Payment Act of 1943, 26 U.S.C.A. § 1621 et seq., 57 Stat. 126, required that the 1942 and 1943 returns be considered together in arriving at the correct 1943 tax. The Commissioner's report of the taxpayer's returns for these two years showed a deficiency for the year 1943 amounting to $3910.34. This report was received by the taxpayer in July of 1946. On August 15, 1946, he filed a third amended return in which no war losses were claimed, the taxes were recomputed and the deficiency forwarded to the Commissioner. The Commissioner, on October 20, 1947, served upon the taxpayer a notice of deficiency in his 1943 income tax as computed in the report. In arriving at the deficiency, the Commissioner gave no consideration to the third amended return. Within the statutory time, a petition to redetermine the deficiency stated in the notice was filed in the Tax Court alleging that the deficiency should have been determined in accordance with the third amended return. The Commissioner joined issue on the allegations in the petition. The essential facts were stipulated and the Tax Court determined the deficiency for the year 1943 without giving consideration to the war loss claim. It is conceded that if the taxpayer is permitted to withdraw the claim his income tax liability for the years 1942 and 1943 would be increased.

At the outset, we are confronted with the contention of the Commissioner that the decision of the Tax Court in refusing to permit the withdrawal of the war claim was in fact favorable to the taxpayer and that such taxpayer is not an "aggrieved person" within the meaning of the law and cannot maintain this appeal. Admittedly, the purpose of the withdrawal of the claim was to re-establish the cost basis for the

bonds, as Title 26 U.S.C.A. § 127(c) (1) requires the claimant to include the value of the property as gross income at the time there is a recovery as contemplated by that section. In the petition for redetermination before the Tax Court, it was alleged that the bonds were not a war loss and should not have been claimed as such by the taxpayer and that the Commissioner should not have allowed them in the first instance. The stipulated facts showed the bonds to have had a substantial value and that there was a ready market for them during the time the islands of Cebu and Panay were under control of the Japanese. The taxpayer contends that this was sufficient to show conclusively that the bonds were not worthless within the meaning of the statute. This was the issue put squarely to the Tax Court which decided the same against the taxpayer. The Tax Court determined the deficiency for the year 1943 without the elimination of the war loss claim. This stands as an adjudication of that issue. Electrical Fittings Corp. v. Thomas and Betts Co., 307 U.S. 241, 59 S.Ct. 860, 83 L.Ed. 1263.

■ Upon receiving notice from the Commissioner that there is a deficiency with respect to income tax, the taxpayer may file a petition with the Tax Court "for a redetermination of the deficiency." 26 U.S.C.A. § 272(a) (1). The Tax Court then has jurisdiction to determine the correct deficiency even though the amount so determined is greater than that found by the Commissioner. This right is limited, however, to a claim which "is asserted by the Commissioner at or before the hearing or a rehearing." 26 U.S.C.A. § 272(e). The limitation is obviously for the protection of the taxpayer and would not prevent him from insisting upon a correct determination of the deficiency regardless of the immediate result. Olds & Whipple v. United States, 1938, 22 F.Supp. 809, 818, 86 Ct.Cl. 705. When the jurisdiction of

the Tax Court is properly invoked it has power to review legal errors of the Commissioner whether they be for or against the taxpayer. Champlin v. Commissioner, 10 Cir., 78 F.2d 905, 907. We think the taxpayer is entitled to a correct determination of his tax deficiency without regard to its immediate consequence, and that the failure of the Tax Court to determine a correct deficiency may be reviewed by this court on a petition for review. 26 U.S. C.A. §§ 1141, 1142. The rule that only a party aggrieved by a decision may appeal is recognized, but to be aggrieved it is not necessary that there be an actual pecuniary loss. The proper test is whether the decision invades the legal rights of a person or operates adversely on his property rights and interests.[1]

■ This brings us to the basic question presented, that is, were the bonds a war loss within the meaning of the statute? We think they were. The purpose of Section 127 as stated by the Senate Finance Committee was to provide, for tax purposes, practical rules for the treatment of property which had been destroyed or seized in the course of military and naval operations during the last war.[2] One of the objects of the statute was to permit a taxpayer to declare a loss equal to the cost of securities owned by him, the underlying assets of which were located in countries which were at war with the United States or in territories seized by such countries. It was not necessary for the taxpayer to show an actual destruction of the property in order to avail himself of the benefit of the statute. All of the assets of the Philippine Railway Company were located in territories seized by the Imperial Japanese Government. The statute therefore presumes that all of the property of that company was destroyed or seized when the islands came under Japanese control. Ford v. Commissioner, 6 T.C. 499, Heckett v. Commissioner, 8 T.C. 841. The bonds issued

1. 2 Am.Jur., Appeal and Error, Sec. 152; Houchin Sales Co. v. Angert, 8 Cir., 11 F.2d 115, 118; Beachler v. Ford, Ohio App., 60 N.E.2d 326, 337; Afriat v. Afriat, 61 Nev. 321, 117 P.2d 83, 119 P.2d 883; People ex rel. Jacob Ruppert Realty Corp. v. Cantor, 115 Misc. 519, 188 N.Y.S. 885, 890.

2. Senate Report No. 1631, 77th Congress, 2d Session, P. 127.

by that company became worthless according to the provisions of the statute. Title 26 U.S.C.A. § 127(a) (3). The taxpayer had the right to elect whether or not he would declare them a war loss.[3] Here he elected to accept the benefits of the statute and made his returns accordingly. The commissioner and the taxpayer recognized such election as late as 1945 when the second amended return was submitted. The contention of the taxpayer that the bonds were not worthless for the reason that they had a continuous market value[4] from the time of the seizure of the Philippine Islands until the liberation of the same is without merit. The aforesaid statute provides that "an interest shall be deemed to have become worthless notwithstanding the fact that such interest has a value if such value is attributable solely to the possibility of recovery of the property, compensation (other than insurance or similar indemnity) on account of its destruction or seizure, or both." The value of the bonds was attributable solely to the possibility of recovery of the property as all the physical assets of the corporation were located in the territories seized. This is made clear by the fact that the market value fluctuated with the fortunes of the United States military and naval forces in the Pacific. They reached their prewar price when it became apparent that the defeat of the Japanese was only a question of time.

Congress extended the statutory time for the claiming of such war losses to December 31, 1950, Act Aug. 27, 1949, 63 Stat. 667, 26 U.S.C.A. § 127 note. The taxpayer argues that he has the right to withdraw his claim for such loss at any time within this period by filing an amended return without the express permission of the Commissioner. We find no provision in the statute which permits a taxpayer to file an amended return after the time for filing of his original return has expired.[5] In proper cases the Commissioner, in his discretion, may permit the filing of an amended return. Morrow, Becker & Ewing v. Commissioner, 5 Cir., 57 F.2d 1. No abuse of that discretion is shown in this case. The taxpayer, having elected to avail himself of the provisions of the statute which he had a right to do, could not thereafter withdraw the election without the permission of the Commissioner.[6] We are not dealing with a situation where the taxpayer desires to correct errors or miscalculations in his original return. Here it is sought to change the basis upon which taxes for different years will be computed. It is a case where the election made by a taxpayer later resulted in a disadvantage to him. He cannot at this late date disavow that election.

Judgment is affirmed.

3. U. S. Treasury Regulations 111, Sec. 29.-127(a) (3).

4.
| Year | High | Date | Low | Date |
| --- | --- | --- | --- | --- |
| 1942 | 4½ | Nov. 12 | 1¾ | Feb. 13 |
| 1943 | 9 | May 20 | 3¼ | Jan. 6 |
| 1944 | 19⅝ | July 12 | 7⅜ | Jan. 7 |
| 1945 | 30 | June 7 | 15¾ | Jan. 3 |

5. U. S. Treasury Regulations 111, Sec. 29.127(a)-2(c); Kunkel & Co. v. Commissioner, 3 B.T.A. 133, 137; United States ex rel. Greylock Mills v. Blair, 54 App.D.C. 27, 293 F. 846, certiorari denied 264 U.S. 587, 44 S.Ct. 335, 68 L. Ed. 863; William B. Scaife & Sons Co. v. Driscoll, 3 Cir., 94 F.2d 664, certiorari denied 305 U.S. 603, 59 S.Ct. 63, 83 L.Ed. 383; J. E. Riley Inv. Co. v. Commissioner, 311 U.S. 55, 61 S.Ct. 95, 85 L. Ed. 36.

6. J. E. Riley Inv. Co. v. Commissioner, supra; Pacific National Co. v. Welch, 304 U.S. 191, 194, 58 S.Ct. 857, 82 L. Ed. 1282; Iron Mountain Oil Co. v. Alexander, 10 Cir., 37 F.2d 231, 234, certiorari denied 281 U.S. 768, 50 S.Ct. 466, 74 L.Ed. 1175; Commissioner v. Moore, 10 Cir., 48 F.2d 526, 528; William B. Scaife & Sons Co. v. Driscoll, supra; United States ex rel. Greylock Mills v. Blair, supra. In Champlin v. Commissioner, 10 Cir., 78 F.2d 905, 911, this court said, "The general rule is that where a taxpayer has exercised an option afforded by statute he cannot retroactively and ex parte rescind his action."