STEWART v. UNITED STATES.

Civ. No. 10.

United States District Court
D. Nebraska, Lincoln Division.

Aug. 28, 1951.

222

Daniel Stubbs (of Davis, Stubbs & Healey), Lincoln, Neb., and Robert V. Denney (of Denney & Denney), Fairbury, Neb., for plaintiff.

Joseph T. Votava, U. S. Atty., Omaha, Neb., for defendant.

DELEHANT, District Judge.

The plaintiff brought this action to recover from the defendant the sum of $1,-344.17, with interest thereon from May 25, 1948, on account of additional income tax claimed wrongfully to have been assessed and paid in respect of his income for the years 1942 and 1943.[1] Trial upon the issues joined has been had[2] and typewritten briefs have been submitted to the court.

A single question is involved. It is whether the proceeds of a Commodity Credit Corporation loan on his 1942 wheat crop in the sum of $3,939.87[3] which were received by the plaintiff during August, 1942 should, under the facts admitted or established, be included for income tax purposes in the plaintiff's gross income for 1942, or for 1943 during which year the wheat under loan was sold and a small amount above the loan was received from the sale. If they are includible in the gross income for 1942 the plaintiff should recover. If not, his action must be dismissed. The following recital of the facts found is narrowly limited to items relevant to that question.

1. The two years were necessarily considered together in the Commissioner's final computation, as also in that of the plaintiff and in his return for the year 1943, because of the partial tax forgiveness provisions of Section 6 of the Act of June 9, 1943, 57 Statutes at Large 126, commonly known as the "Current Tax Payment Act of 1943", 26 U.S.C.A. § 1622 note.

2. Some continuances of the trial were occasioned by illness of the plaintiff and members of his family.

3. From the record it seems at least possible that the indicated amount may be slightly less than the amount actually received by the plaintiff on the loan. The loan was received by the plaintiff in three checks aggregating in all $4,401.05. From them certain deductions were made with the result that the total net deposits to the plaintiff's credit in his bank account out of their proceeds was the indicated sum of $3,939.87. Of the deductions, one for $286.91, being the allocation to a landlord of his share of the net proceeds of the loan on wheat raised on his land, and three totaling $36.13 for Commodity Credit Corporation charges, are satisfactorily explained. But the other deduction of $138.14 for a payment to the local county treasurer and said by one of the plaintiff's witnesses to have represented a payment on account of "delinquent taxes" seems not to be supportable. Some explanation of this item may have been possible, but the court has been unable to consider that it has been made in the record. So, probably, to the extent of the amount of that deduction, the net amount of the loan received by the plaintiff is understated. But by the pleadings and stipulations of the parties and the evidence the loan is treated for all practical purposes as having been in the indicated amount. It is so regarded by the court, without further question or comment.

The plaintiff is a man over seventy-three years of age and is, and throughout 1942 and 1943 was, a resident of Jefferson County, Nebraska engaged in farming on about fifteen hundred acres of land divided in not clearly shown proportions between pastures and tilled tracts, upon the latter of which he raised and raises various grains including wheat. In his boyhood he received a common school education. He is literate and habitually attends to his general business interests.

In August 1942, he procured from Commodity Credit Corporation the loan in question and deposited the net amounts of the checks representing it in his bank account at Fairbury, Nebraska. (See details as to amounts in footnote 3). During the year 1943 at a date not exactly shown, the wheat covered by the loan was sold and a small amount above the loan was thereby secured and later accounted for as income received in 1943.[4]

Under date of March 24, 1943 [5], he filed with the Collector of Internal Revenue at Omaha his individual income tax return on Form 1040 for the calendar year 1942, with attached statements, which he had signed on March 22, 1943, showing a total tax liability of $82.25. He paid that tax. Nowhere in that return was any mention made of the taxpayer's receipt of any income in the way of a Commodity Credit Corporation loan. In it, income from the sale of grain was reported in the sum of $1,475.79, an amount which approximately represents the following several admitted items of receipt by him from that source: from barley $1,056.29, from oats $408.80.[6] That return was prepared for him by an attorney at law practicing at Fairbury from date obviously inadequate to support an accurate account-

ing of the taxpayer's income for the year and his allowable deductions therefrom, including (a) an adding machine list of his bank deposits, and (b) his canceled bank checks or at least some of them.

Upon the disputed question whether in his return for 1942 the plaintiff reported and returned the proceeds of the Commodity Credit Corporation loan the court finds squarely that he did not so report or return them, either in their correct amount or at a mistaken figure or otherwise. He simply and completely omitted that item. And the court further finds that he did not intend to report or return it. The return so indicates and no convincing evidence to the contrary persuades the court that his return was made otherwise than as he intended it should be made.

For many years immediately preceding 1942 the plaintiff had made no income tax returns. In fact, he declared in his original return for 1942 that his last previous return filed was for the year 1917. Whether his income was such in any of the intervening years as to require a return does not appear from the record or the evidence and no finding is made upon that point.[7]

On January 10, 1944, the plaintiff filed with the same collector his individual income and victory tax return for the calendar year 1943, which was prepared for him by a local deputy Collector of Internal Revenue from data and information furnished by the plaintiff. In that return, one of the claimed deductions from gross income in the way of "farm expenses" was the sum of $4,225.70 as the repayment of the 1942 wheat loan. In explanation and support of that deduction the plaintiff stated in the return: "1942 wheat loan paid off declared as income in 42, $4,225.70." (Em-

---

4. This is said to have been $26.62. The court accepts that amount as correct.

5. The return was, therefore, tardily made, but no issue is made on that score.

6. The total of the two items (taken from his subsequent amended return for 1942, infra) is $1,465.09, just $10.70 less than the total amount originally reported as received from the sale of grain. And if an item of $22.45 received from the sale of hay and originally unmentioned be

added, the total receipts slightly exceed the reported figure.

7. Attention is given to the statement in the plaintiff's amended return for 1942 that he had made a return for the year 1941. But that appears from his own oral testimony upon the trial to be factually untrue. Whether in its making it was intentionally false is not in issue, and no finding is made upon that point.

phasis now added.) The foregoing italicized statement was and is factually untrue (supra). After charging himself with the unforgiven twenty-five per cent of his reported income tax for 1942 and taking credit for the entire tax for 1942, theretofore paid, the plaintiff in his 1943 return computed his unpaid balance of income and victory tax to be $1,528.23, and he paid that sum.

Prior to June 5, 1946 investigation had been initiated and was pending respecting the plaintiff's earlier tax returns, or at least the one made by him for 1943. The nature and details of that investigation do not clearly appear from the evidence. It is shown, however, that in the course of the investigation the plaintiff had received a letter or letters from unspecified governmental sources inquiring concerning some details of his return for 1943, which also are not identified.

On June 5, 1946 the plaintiff signed a proposed amended income and victory tax return for the year 1943 purporting to show his correct total income and victory tax to be $1,386.34 and that he had overpaid such tax to the extent of $224.47. That return was prepared for him by the president of the Fairbury bank in which he kept his banking account. Its figures substantially differed from those in the original return. It was filed on June 7, 1946.

Thereafter, on December 3, 1946, the plaintiff filed with the Collector at Omaha a proposed amended income tax return for 1942, also prepared, but as of December 2, 1946, by the bank president, at the top of the first or face sheet of which is the typewritten suggestion "To Be Considered Along With Amended Returns For 1943 and 1944[8] Now Pending." That proposed amended return includes among other items of income, one of $3,939.87 said to have been received from the sale of wheat raised. It also includes the items of receipt from the sale of barley, oats and hay already adverted to (see footnote 6). It otherwise alters the report both of income and of deductions, shows a net farm profit

of $5,278.57 instead of $1,636.12 shown in the original return, and computes the correct income tax for the year to be $579.22 instead of $82.25, as disclosed in the original return.

The Commissioner, after an intervening waiver of limitations, and within the period provided in the waiver, on March 2, 1948 determined that the amount of tax properly payable by the plaintiff for the year 1942 was nothing and for the year 1943, $2,454.89, being $844.08 more than the plaintiff had originally returned and paid for both of the two years. Essentially the increase resulted from the exclusion of the amount of the 1942 wheat loan from gross income for 1942 and its inclusion in gross income for 1943. An assessment of additional tax in that amount with interest in the sum of $216.27 was made. The plaintiff paid the additional tax and interest as follows:

On May 25, 1948                                471.80
Date not shown—by credit from
  overpayment on 1944 Tax           372.28
August 18, 1948 (Interest)              216.27

The plaintiff made timely claim for refund which was rejected. This suit was brought seasonably.

The court, however, notes that, as revised and reflected in Exhibit A attached to the stipulation of the parties received in evidence upon the trial, the claim persisted in by the plaintiff is for the sum of $1,122.70, being the difference between the plaintiff's tax on account of the years 1942 and 1943 as determined by the Commissioner, $2,454.89 and the amount of tax acknowledged by the plaintiff to be payable for those years, $1,332.19. And he also claims interest on the alleged overpayment from May 25, 1948. That is accepted by the court as the amount actually in controversy.

The court considers and concludes that, in the light of all of the facts, the amount of the Commodity Credit Corporation's wheat loan received by the plaintiff in 1942 must be included in his gross income for

8. An original return and amended return for 1944 are also in evidence. The amended return was made and filed on the same dates as the amended return for 1943.

the year 1943, and, in consequence that the plaintiff may not recover and his complaint must be dismissed at his costs. The considerations leading to that result will now be stated briefly.

■ Ordinarily the receipt by a borrower of the proceeds of a loan does not constitute reportable or taxable income; and the result is not different though the loan be granted on the security of a chattel mortgage. If upon the later sale of the mortgaged chattels a profit results to the borrowing owner, the reportable increment is measured, with circumstantial variations, by the excess of the net sale price over the appropriate cost basis for the chattels sold. And the situation is not affected by the owner's earlier borrowing and his repayment of the loan, possibly, though not necessarily, at the time of the sale.

Basically and without statutory indulgence, the situation would not be otherwise with the proceeds of loans upon commodities made by the Commodity Credit Corporation. But in recognition of the purposes of the program under which those loans were made, some special features were attached to them. Among such features was the immunity of the borrower (with due safeguards touching fraud and the quantity, quality, and grade, and care and preservation or delivery, of the mortgaged commodity) from personal liability for any deficiency in the loan arising from the sale of the pledged commodity. Title 7 U.S.C.A. § 1425. In practical operation, when commodity prices at final sale times

were unfavorable, the amounts received in the way of loans came to be the prices actually received by the producing borrowers for their crops. Generally too, the proceeds of the corporation's loans were gotten by the producers of the pledged assets in the year of the production of the mortgaged crops when the deduction of the expense of production was appropriate and easy.

Considerations arising from those sources, along with others, eventually and quite early moved the congress to the allowance of an indulgent option to the borrower respecting the year or years in which reporting for income tax purposes may be made of the proceeds of such borrowings. The pertinent result is Title 26 U.S.C.A. § 123(a) and (b),[9] which follow:

"(a) Amounts received as loans from the Commodity Credit Corporation shall, *at the election of the taxpayer,* be considered as income and shall be included in gross income for the taxable year in which received. (Emphasis added.)

"(b) If a taxpayer exercises the election provided for in subsection (a) for any taxable year beginning after December 31, 1938, then the method of computing income so adopted shall be adhered to with respect to all subsequent taxable years unless with the approval of the Commissioner a change to a different method is authorized."

Regulations have been promulgated in pursuance of, and in harmony with, the cited statute. See C.F.R. (1949 Ed.) Title 26 Sections 29.123–1 and 2, copied in a footnote.[10]

---

9. Subsection (c), dealing only with earlier years, is not directly applicable and is not now quoted. It is adverted to later but only for its possible collateral significance upon the question of the appropriate time for signification of the taxpayer's election.

10. "§ 29.123–1 Election to include loans in income. A taxpayer who receives a loan from the Commodity Credit Corporation may, at his election, include the amount of such loan in his gross income for the taxable year in which the loan is received. If a taxpayer makes such an election, then for subsequent taxable years he shall include in his gross income all amounts received during those

years as loans from the Commodity Credit Corporation, unless he secures the permission of the Commissioner to change to a different method of accounting. Application for permission to change such method of accounting and the basis upon which the return is made shall be filed within 90 days after the beginning of the taxable year to be covered by the return.

"§ 29.123–2 Effect of election on adjustments for other taxable years. If a taxpayer elects or has elected under section 123 of the Internal Revenue Code or section 223(d) of the Revenue Act of 1939, as amended, to include in his gross income the amount of a loan

Of significance, too, is the fact that in Treasury Department Form 1040 F used by the plaintiff in association with Form 1040, for the detailed analysis of his farm income and expenses, in his return for 1942, the printed instructions on page 4 include the following direction to taxpayers: "A taxpayer electing to include in gross income amounts received during the year as loans from the Commodity Credit Corporation should file with his return a statement showing the details of such loans. (See section 123)."

The sectional reference just quoted is obviously to Title 26 U.S.C.A. § 123(a) and (b), supra.

It was made clear upon the trial that the attorney who prepared the plaintiff's original return for 1942 was familiar with the rule touching the income tax accountability for Commodity Credit Corporation loans reflected in the foregoing statute, regulation and instruction. Indeed, a professed want of such familiarity on his part at the time of the making of the return would be almost incredible in view of his practice of law and preparation of income tax returns in a community so largely agricultural.

Counsel for the parties agree in their briefs that there is a complete absence of controlling judicial authority directly applying the statute to a situation of this precise character. In that concession they are correct, although some opinions have at least remotely significant bearing upon the point.

But the statute and regulation make these conclusions clear beyond the necessity of, or obviation by, judicial construction. Usually, and in the absence of election by a taxpayer, amounts received as loans from the Commodity Credit Corpora-

tion are not income. They represent loans, and a loan does not ordinarily result in the borrower's receipt of income. By the remedial provisions of section 123(a), supra, such amounts may be considered and reported and treated as income for the year of their receipt, but only if the taxpayer so elects. If he makes no election they may not be so considered or treated. The election, therefore, requires some decisive action on the taxpayer's part. It will not be inferred from his inaction, especially if that inaction proceeds to the full extent of his solemn declaration of income in terms and amounts which exclude the reasonable possibility of the inclusion of the amounts of such loans in his reported gross income.

Recognizing the indispensability, to his right to insist upon the inclusion of the wheat loan proceeds in his gross income for 1942, of an election in that direction on his part, the plaintiff argues, first, that he made such an election in and by his original income tax return for the year 1942, and secondly and alternatively, that if his primary contention of an election in his original 1942 return be denied, he must be regarded as having made a valid election in his tendered amended return for 1942 filed on December 3, 1946. Neither of his positions is tenable.

The assertion that the plaintiff by his original return for 1942 signified an election to include his loan receipts in his gross income is not only completely invalid; it is little, if anything, short of absurd. Despite the cautionary instruction already quoted, there is in that return no language which could possibly be construed as "a statement showing the details of such" loan. There is complete silence concerning the subject of any loan of the character in question. Moreover, the return itself emphati-

from the Commodity Credit Corporation for the taxable year in which it is received, then:

"(a) No part of the amount realized by the Commodity Credit Corporation upon the sale or other disposition of the commodity pledged for such loan shall be recognized as income to the taxpayer, unless the taxpayer receives an amount in addition to that advanced to him as

the loan, in which event such additional amount shall be included in the gross income of the taxpayer for the year in which received; and

"(b) No deductible loss to the taxpayer shall be recognized on account of any deficiency realized by the Commodity Credit Corporation on such loan if the taxpayer was relieved from liability for such deficiency."

cally repels the supposition that the inclusion of the loan proceeds was contained in, or intended by, it. The only classification under which the plaintiff disclosed his receipt of income within which they could possibly have been comprehended is income from the sale of grain raised. And the amount there specified, accounted for almost exactly from identifiable grains other than wheat,[11] is alone demonstrative of his intention not to return as taxable income for 1942 his receipts from the wheat loan. Apart from the circumstance just noted that the moneys returned under the item of receipts from the sale of grains are entirely attributable to specific other crops, another fact is conclusive. The net loan proceeds were $3,939.87. The acknowledged total receipts from the sale of grains was only $1,475.79. That incongruity and the eventual identification otherwise than from the loan of the real sources of the returned item of $1,475.79, compel the rejection of the plaintiff's argument that in his original return of income he actually included the loan proceeds, though at a mistaken figure.

To the court, the thought seems to be entirely valid that the original tax return for 1942 of the plaintiff discloses not merely inaction of the plaintiff touching the allowable election to treat the loan proceeds as income during that year, but also affirmative action in the direction of its exclusion from such income. The certificate of the taxpayer made in the return under the penalties of perjury declared that he had examined the return and that to the best of his knowledge and belief it was a true, correct, and complete return made in good faith for the taxable year stated pursuant to the Internal Revenue Code and the regulations issued under authority thereof. (See references to code provisions, infra). Such a certificate appended to a return making no reference to a comparatively large and important item, which, at the taxpayer's option, might have been listed in the disclosure of income, discloses an affirmative intention to exclude the item.

There is no merit at all in the argument that the statement (supra) in the plaintiff's original return for 1943, that the 1942 loan proceeds had been "declared as income in '42" was reflective of his intention so to declare such proceeds. That statement was, in charitable appraisal, untrue. And, of course, it was not, and was not intended to be, in and of itself, an election retroactively operative. The ensuing tax computation in the 1943 return is irreconcilable with such an hypothesis.

Here the court takes note of a broadly irrelevant argument which occupies a portion of the briefs of counsel, but may be disposed of in this opinion with only a brief reference. It deals with an intimation by the defendant of the existence of a purposeful inclination on the plaintiff's part towards the fraudulent concealment of his income. On this point, the court agrees with the plaintiff that what matters in this case is the narrow and unadorned factual history, not whether he is generally an evil man. The plaintiff's personal income tax record, so far as the evidence inadequately reflects it, has been considered only to the very limited extent that it may remotely reflect upon his probable purpose in his original 1942 accounting. Thus considered, it may not be regarded as adequate to nullify or impair the conclusions adverse to the plaintiff which the court has already drawn from the original 1942 return, both in its language and in its pertinent silences. More than that is neither said nor decided upon the subject.

The alternative contention of a valid election in the tendered amended return for 1942 presents greater difficulty of solution, but is equally without merit. In its context that amended return was both intolerably tardy and an inoperative attempt to reverse a position theretofore taken by the plaintiff in his original return for 1942.

The defendant contends that, under logical analysis, the taxpayer's election contemplated in Title 26 U.S.C.A. § 123(a) and (b) is required to be made on or before March 15 of the year following the taxable

11. In his tendered amended return for 1942.

year, Title 26 U.S.C.A. § 53, or in any event not later than the actual making of the taxpayer's return for the taxable year, if that return be made out of time. And in this case it contends that the taxpayer's tender of his original return for 1942, without accounting for or reference to the 1942 wheat loan, is effective as a negation of an election on his part within the contemplation of the statute, or, affirmatively considered, as an election not to report and return the loan proceeds as taxable income for 1942. The court agrees with that position, especially in the light of the entire history of the plaintiff's income tax accounting for 1942, 1943 and 1944.[12]

It is true that Title 26 U.S.C.A. § 123 does not by special provision, expressly define a date on or before which the election within its contemplation must be made. But no such formal definition is necessary. Title 26 U.S.C.A. § 53 prescribes the time by which a return for each taxable year must be made. Section 51(a) of the same title requires, inter alia, that such return "shall set forth * * * the items of gross income and the deductions and credits allowed under this chapter and such other information for the purpose of carrying out the provisions of this chapter as may be prescribed" by regulations for whose promulgation by the Commissioner of Internal Revenue provision is made earlier in the same subsection as well as elsewhere. And the regulations, which need not be cited or quoted, serve to emphasize the necessity of timeliness and adequacy of detail in making returns.

The return is the taxpayer's declaration of his income, gross and net, and of his position touching its taxability. It is therefore logically the place, and the date for its filing the time, for the making of elections such as that envisioned in Title 26 U.S.C.A. § 123(a). It has been so considered in other but similar relations, e.g., in the making of joint or separate returns by husband and wife, Buttolph v. Commissioner, 7 Cir., 29 F.2d 695; Rose v. Grant, 5 Cir., 39 F.2d 340; United States v. Pettigrew, 9 Cir., 81 F.2d 666; in the making of consolidated or separate returns by corporations entitled to an election in that behalf, Alameda Investment Co. v. McLaughlin, 9 Cir., 33 F.2d 120; Radiant Glass Co. v. Burnet, 60 App.D.C. 351, 54 F.2d 718; Lucas v. St. Louis National Baseball Club, 8 Cir., 42 F.2d 984; Safety Electric Products Co., Inc., v. Helvering, 9 Cir., 70 F.2d 439, and in the method of allocating profits from the sale of property on credit, Pacific National Company v. Welch, 304 U.S. 191, 58 S.Ct. 857, 82 L.Ed. 1282. A generally similar position is taken in many other cases which are distinguishable from the present situation by reason of statutory definition of the election time in relation to the narrow subjects with which they respectively deal.

Besides, Title 26 U.S.C.A. § 123 contains provisions whose practical administration clearly points to return time as the time for the election allowed by the section. By its subsection (b), it provides that the election, once made for any taxable year beginning after the section's operative date, "shall be adhered to with respect to all subsequent taxable years unless with the approval of the Commissioner a change to a different method is authorized." Obviously the election, with that sweeping prospective operation, must be made at the time, and as a part, of the tax reporting for the initial year of its effective duration. Otherwise, the accounting basis for that year and for all future years would be set at large and become incapable of seasonable and precise determination. Subsection (c) of the section in its present form at least suggests a like view, although admittedly, it is limited to taxable years beginning after December 31, 1938 and before January 1, 1942 and, therefore, is only remotely applicable here. But it does limit to a designated time the final opportunity to

12. This court does not say that it would not in any circumstances have been possible after the filing of the original return for 1942, e. g., some time later in 1943, for the plaintiff, upon grounds adequately supporting his action, to have altered his election by an allowed amended return. It deals only with the actual happenings in the instant situation.

make the election contemplated in Section 123(a) in respect of those earlier years to which the option was indulgently extended, for many or most of which the return time had elapsed and accountings had undoubtedly been made. The inference is reasonably allowable that for prospective application, no prescription of election time was necessary and that the generally prescribed return date would be the time for the declaration of the taxpayer's option.

■ So, the court considers not only that the plaintiff made his election in his original 1942 return, not to report the loan receipts as income for that year, but also that the time for such election expired on March 15, 1943 or, in any event in his case, on March 24, 1943, when he made an accepted income tax return for the year 1942.

■ Nor may the plaintiff's attempted election late in 1946 in his tender of an amended return for 1942 avail him for his present purpose. Amended returns as a matter of right are not provided for by law. Keeler v. Commissioner, 10 Cir., 180 F.2d 707; Morrow, Becker & Ewing, Inc., v. Commissioner, 5 Cir., 57 F.2d 1. It is true that the commissioner may accept an amended return in appropriate circumstances, and is accustomed to exercise liberality in that behalf. But where a taxpayer has once exercised his choice between two or more unquestionably allowable courses he may not ordinarily reverse his position by the filing of an amended return with the resulting obligation of the Commissioner to accept, allow and act upon it. J. E. Riley Investment Co. v. Commissioner, 311 U.S. 55 [13], 61 S.Ct. 95, 85 L.Ed. 36; Pacific National Co. v. Welch, supra; Buttolph v. Commissioner, supra; Rose v. Grant, supra; United States v. Pettigrew, supra; Alameda Investment Co. v. McLaughlin, supra; Radiant Glass Co. v. Burnet, supra; Lucas v. St. Louis National Baseball Club, supra; Safety Electric Products Co., Inc., v. Helvering, supra; Lucas v. Sterling Oil & Gas Co., 6 Cir., 62 F.2d 951, but see its further citation, in-

fra; Commissioner of Internal Revenue v. Saunders, 5 Cir., 131 F.2d 571; Orange Securities Corporation v. Commissioner, 5 Cir., 131 F.2d 662.

It is quite true that an amended return has been held to be allowable in circumstances in which an earlier original return has not been regarded as a binding election between allowable alternatives, because it was made with inadequate factual knowledge, Lucas v. Sterling Oil & Gas Co., supra, or in some instances because it was made in the misapprehension of the taxpayer's legal rights, Momsen-Dunnegan-Ryan Co. v. Helvering, 63 App.D.C. 9, 68 F.2d 754; Richardson v. Commissioner, 2 Cir., 126 F.2d 562, supplemental opinion, page 569. And it has been held that relief may be had against an assumed choice of positions where no right to exercise the supposed option really existed, e.g., Commissioner of Internal Revenue v. Arnold, 1 Cir., 147, F.2d 23; and Ross v. Commissioner, 1 Cir., 169 F.2d 483, 7 A.L.R.2d 719, limiting and redefining the rule stated in Moran v. Commissioner, 1 Cir., 67 F.2d 601.

But no such situation exists in the instant case. The present plaintiff in his original return for 1942 treated his wheat loan for 1942 as an ordinary loan, and did not elect to return it as taxable income for that year. He had a perfect right to proceed in that manner. Notwithstanding that course, by attempting in his original return for 1943 to charge the repayment of the loan as an expense of operation in 1943, he appears not to have accounted in that year for so much of the proceeds of the sale of the mortgaged wheat finally sold in 1943 as was represented by the 1942 loan. So, in his original returns it was not reported in substance for either year. With his 1943 return under scrutiny in 1946, he finally tendered an amended return for 1942 in which he proposed for the first time to account for the loan proceeds as income for 1942. He had, simply, and after an intolerable period of experimentation with his actual annual income results

---

13. Cited only for its teaching touching the allowability and effect of amended returns. The statute there examined prescribed the time for the making of the election in question.

in relation to rapidly rising tax rates, concluded that his earlier postponement of taxation's evil day[14] in reference to the loan receipts had resulted in financial disadvantage to him. And he then sought to retrace his steps and select the once allowable but rejected alternative which events had proved the more favorable to him.

Such a course may not be approved. J. E. Riley Investment Co. v. Commissioner, supra; Pacific National Co. v. Welch, supra; Commissioner of Internal Revenue v. Saunders, supra; Orange Securities Corp. v. Commissioner, supra. In an admittedly distinguishable setting, but with presently pointed applicability, the supreme court said, 311 U.S. at page 59, 61 S.Ct. at page 97, in the Riley Investment Company case: "If petitioner's view were adopted, taxpayers with the benefit of hindsight could shift from one basis of depletion to another in light of developments subsequent to their original choice. It seems clear that Congress provided that the election must be made once and for all in the first return in order to avoid any such shifts."

That observation was offered in reference to the subject of mineral depletion concerning which a formal statutory definition of the date for the signification of the taxpayer's initial option was operative. But it is no less significant upon an attempted change of position of the sort now before the court, undertaken with the fortifying illumination of hindsight.

It may be stated, finally, that throughout this memorandum the court, after the pattern of the pleadings and the briefs, has somewhat inexactly referred to the issue as being whether the wheat loan receipts should be considered as income for 1942 or for 1943. Of course, counsel and the court are aware that, while under the statute such a reference is correct if the item is included in income for 1942, it is not exactly accurate if the other alternative is adopted. For, then, the accountability is strictly for the proceeds of wheat raised by the taxpayer and sold during the taxable year. The distinction is one of detail not of substance.

Judgment of dismissal is being entered.

14. The implication is not out of place. For nearly twenty-five years before 1942 the plaintiff had not made any income tax returns or paid any income taxes. In that interval he had observed and experienced the decade of the 1930's with its successive crop failures in his vicinity. 1942 was a year of good crop yields and advancing prices. The loan receipts amounted to nearly $4,000 and he was not compelled to treat them as then taxable income. On the contrary, it required the affirmative act on his part of reporting and accounting for them to make them returnable at all for the year 1942. He did not know what his crop returns would be in 1943. The destructive droughts of the then recent 1930's might recur. In that situation. he obviously concluded not to pay for 1942 income tax on any item on which he was chargeable only at his option. He simply satisfied his existing obligation as cheaply as he could. That his choice proved to be the unfavorable one may be unfortunate. It remains his choice nevertheless.